# The Toledo, Wabash and Western Railway Co.

*v.*

# The City of Jacksonville.

1. Constitutional law—*railroads subject to police regulations.* Railway corporations are subject to police regulations the same as private citizens. The legislature, when the public exigencies require it, has power to regulate corporations in the exercise of their franchises, so far as to provide for the public safety. The exercise of this right in no manner interferes with or impairs the powers conferred by their acts of incorporation.

2. Under this power, it has been held that the legislature may require railroad corporations, notwithstanding no such right has been reserved in

| | |
|---|---|
| 67 | 37 |
| 33a | 90 |
| 67 | 37 |
| 161 | 308 |
| 67 | 37 |
| 158 | 658 |
| 67 | 37 |
| 65a | 635 |
| 67 | 37 |
| 175 | 367 |
| 67 | 37 |
| 185 | 143 |
| 185 | 252 |
| 67 | 37 |
| 193 | 6356 |
| 67 | 37 |
| d196 | 4593 |
| 67 | 37 |
| 205 | 5505 |
| 67 | 37 |
| 114a | 5382 |

their charters, to fence their tracks, to put in cattle guards, to place upon their engines a bell, and to do many other things for the protection of life and property.

3. Same—*police power of State can not be granted away.* This police power is inherent in the State, and it can not part irrevocably with its control over that which is for the health, safety and welfare of society.

4. Same—*police regulations, when presenting judicial question.* What are reasonable regulations, and what are subjects of police powers, must, necessarily, be judicial questions. The law-making power is the sole judge when the necessity exists, and when, if at all, it will exercise the right to enact such laws.

5. Same—*limitations upon exercise of police power.* Like other powers of government, there are constitutional limitations to the exercise of the police power. The legislature can not, under the pretense of exercising this power, enact laws not necessary to the preservation of the health and safety of the community, that will be oppressive and burdensome upon the citizen. If it should prohibit that which is harmless in itself, or command that to be done which does not tend to promote the health, safety or welfare of society, it would be an unauthorized exercise of power, and it would be the duty of the court to declare such legislation void.

6. Police regulation—*whether reasonable.* An ordinance of a city, which required a railroad company to keep a flagman by day and a red lantern by night at a certain street crossing, when the company had only a single track, and over which only its usual trains passed, and where it did not appear that such crossing was unusually dangerous, or more so than ordinary crossings, *held* not to be a reasonable requirement, and therefore within the constitutional limitation on the exercise of the police power.

7. A regulation that would require a railroad company to place a flagman at such places where danger to the public safety, in the judgment of prudent persons, might be apprehended at any time, would be a reasonable one, and could unquestionably be enforced.

Appeal from the Circuit Court of Morgan county; the Hon. Charles D. Hodges, Judge, presiding.

This was a suit brought by the city of Jacksonville against the Toledo, Wabash and Western Railway Company, before a justice of the peace, to recover a penalty for a violation of the ordinance of the city referred to in the opinion of the court. The cause was taken to the circuit court by appeal, where a trial was had before the court, without a jury. The

court found the defendant guilty, and rendered judgment in favor of the plaintiff for $50. The defendant appealed.

Mr. WILLIAM H. BARNES, for the appellant.

Mr. EDWARD DUNN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought to recover a penalty for a failure to comply with an ordinance of the city which required the railroad company to keep a flagman by day and a red lantern by night at the point where its track crosses the street or State road just west of the bridge known as "rock bridge."

It is stipulated that the company did not keep a flagman at the crossing indicated; that it is within the bounds of the city; that it is an important crossing, and much used; that it has been so used by the railroad and the inhabitants for the last twenty-five years, and that, by resolution of the city council, the company is not required, at this point, to run its trains at a rate of speed not greater than eight miles per hour, as required by general ordinance.

The charter of the city contains the usual grants of power to pass such ordinances as may be deemed necessary for the good government of the city, to control streets and alleys, to declare what shall be deemed a nuisance and abate the same, and to control the laying of railroad tracks in the streets and alleys. It contains no express grant of power to pass the ordinance in question. The right to do so is claimed under the police power of the municipality.

Waiving the question of the power of the city to pass the ordinance without being expressly authorized by the general assembly, we shall treat the case as though the city had the right, by the grants in its charter, to exercise all the power in the regulation of its domestic affairs that the State could do for the general welfare of the people.

There can be no question that railway corporations are subject to police regulations as well as private citizens. The general assembly, when the public exigencies require it, has power to regulate corporations in their franchises so as to provide for the public safety. The exercise of this right in no manner interferes with or impairs the powers conferred by their acts of incorporation. *The G. and C. U. R. R. Co.* v. *Loomis,* 13 Ill. 548; *Thorpe* v. *Rutland and Burlington R. R.* 27 Ver. 140.

Under this power, it has been held that the legislature may require railroad corporations, notwithstanding no such right has been reserved in the charters, to fence their tracks, to put in cattle guards, to place upon their engines a bell, and to do many other things for the protection of life and property. This power is inherent in the State, and it can not part irrevocably with its control over that which is for the health, safety and welfare of society.

But such regulations must be what they purport to be, police regulations, and must be reasonable when applied to corporations or individuals. What are reasonable regulations, and what are subjects of police powers, must necessarily be judicial questions. The law-making power is the sole judge when the necessity exists, and when, if at all, it will exercise the right to enact such laws.

Like other powers of government, there are constitutional limitations to its exercise. It is not within the power of the general assembly, under the pretense of exercising the police power of the State, to enact laws not necessary to the preservation of the health and safety of the community that will be oppressive and burdensome upon the citizen. If it should prohibit that which is harmless in itself, or command that to be done which does not tend to promote the health, safety or welfare of society, it would be an unauthorized exercise of power, and it would be the duty of the courts to declare such legislation void.

It seems to us that the ordinance in this case imposes an unreasonable burden upon the railroad company. There is but a single track, so far as the record discloses, at the point where it requires the services of a flagman, and only the usual trains of the company pass over it. It is totally unlike a place where a number of tracks cross a public street upon which there is a great amount of travel, where trains are made up, and where the trains and locomotives doing the work pass and repass each other at short intervals. The frequency with which trains pass and repass at such places renders the dangers to be apprehended constantly imminent, and the legislature may so declare and make it obligatory on the company to adopt measures to secure the public safety. The rights of the company and the public to the use of the crossing are mutual, but it is the duty of the company to provide the proper safeguards, and the degree of diligence must be in proportion to the hazard. A regulation that would require the company to place a flagman at such a place, or at any place where danger to the public safety, in the judgment of prudent persons, might be apprehended at any time, would be a reasonable one, and could unquestionably be enforced. There can be no necessity, however, for the services of a flagman at a crossing of a public highway in the country, where there is but little travel. There, it will be a sufficient protection if the company shall be required to erect signs that will notify persons that they are approaching a railroad crossing, and to give the usual signals. It is then the duty of the citizen to exercise a reasonable precaution for the safety of himself and his property.

It would hardly be insisted a regulation that would compel a railway company to maintain a flagman at every crossing of a public road or street on its entire line would be demanded by the public exigencies, or be within the constitutional exercise of the police power of the State. It is a matter of which we may take judicial notice, there does not now exist a necessity to enforce in this State many of those rigid regulations

that have been adopted on some of the English railways, and in some of the densely populated countries on the continent of Europe. Doubtless, as the population increases and the dangers multiply, it will become necessary, in this country, to increase precautionary measures for the public safety, and the companies will be compelled to bear the additional burden made necessary by the hazardous business in which they are engaged. It is their work that renders public crossings dangerous, and hence it is they may be compelled to bear the expenses of such measures as may be adopted to secure the lives and property of those who have an equal right with them to the use of the crossing on the highway.

There is nothing at the crossing where the company is required, by the provisions of the ordinance in the case at bar, to keep a flagman, that makes it unusually dangerous. So far as we know, it is an ordinary crossing. There is but a single track, on which only the usual trains pass at regular and irregular intervals and distant apart. The city has not even deemed it advisable to require the company to slacken the speed of its trains when passing this point, as it is compelled to do by ordinance when crossing other streets in the city. If the company can be compelled to maintain a flagman at this point, there is no reason why it could not be compelled to keep one at every road and street-crossing on its entire line. That there are places where the danger to be apprehended is so constant and imminent, by reason of the construction of the passage way over the track, the company may be required to employ a flagman to warn persons of the danger and conduct them across, we entertain no doubt, but the point designated in this ordinance is not such a one, at least it does not appear to be so from the ordinance itself, or from anything in the record.

The conclusion that we have reached is, that the ordinance under which it was sought to compel the railroad company to maintain a flagman at the point designated is not a reasonable

requirement, and is therefore within the constitutional limit-ations on the exercise of the police power.

The judgment of the court below finding appellant guilty is contrary to law, and must be reversed.

*Judgment reversed.*