# CITY OF LAKE VIEW
## v.
# H. TATE.

*Railroads—Municipal Ordinance—Rate of Speed—Discrimination in Favor of One of Several Roads.*

1. A municipality may regulate by ordinance the rate of speed of railway trains within its limits.

2. Ordinances of this character must be reasonable and consistent with the laws and policy of the State, and must not be oppressive, unequal, or unjust, or partial or discriminating in their operation.

City of Lake View v. Tate.

3. The question of whether an ordinance is a just and reasonable exercise of the power reposed in the common council is a question of law for the court, upon consideration of the circumstances of a given case.

4. In an action to recover a penalty from an engineer for running a train through a municipality at a greater rate of speed than was allowable under one of its ordinances, this court holds that the ordinance in question in attempting to divide the city into two railroad districts, one for each of two roads, and to establish a lower rate of speed for one road than the other, was obnoxious to the objection that it attempted unjustly and oppressively to discriminate against such road, and declines to interfere with judgment for the defendant.

[Opinion filed April 17, 1889.]

APPEAL from the Criminal Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. HARVEY H. ANDERSON, for appellant.

Redfield, in his great work on the law of railways, pages 577–8, thus expresses himself:

" It has been held that a statute giving power to the common council of a city to regulate the running of cars within the corporate limits, authorizes the adoption of an ordinance entirely prohibiting the propelling of cars by steam through any part of the city. We should entertain no doubt of the right of the municipal authorities of a city, or large town, to adopt such an ordinance without any special legislative sanction, by virtue of the general supervision which they have over the police of their respective jurisdiction."

And Judge Dillon is strongly of this opinion. He says :

" Resulting from the power over streets, and to protect the safety of citizens, and their property, municipal corporations, in the absence of legislative restriction, may control the propelling of cars within their limits, and may prohibit the use of steam power." Dillon on Mun. Corp., Sec. 713.

Cooley says :

" Perhaps. the most striking illustrations of the principle here stated will be found among the judicial decisions which have held that the rights insured to private corporations by their charters, and the manner of their exercise, are subject

to such new regulations as from time to time may be made by the State with a view to the public protection, health and safety, and in order to guard properly the rights of other individuals and corporations. Although these charters are to be regarded as contracts, and the rights assured by them are inviolable, it does not follow that these rights are at once, by force of the charter-contract, removed from the sphere of State regulation; and the charter implies an undertaking, on the part of the State, that in the same way in which their exercise is permissible at first, and under the regulations then existing, and those only, may the corporators continue to exercise their rights while the artificial existence continues." Cooley's Const. Lim. (5th Ed.) p. 575.

Coming now to decided cases, and confining the investigation to our own State reports, the power in the legislature to regulate railway operations in the most ample manner has been fully sustained.

In C., B. & Q. Ry. Co. v. Haggerty, 67 Ill. 113, the validity of a speed ordinance was in question. I now quote from the opinion: "It is contended that the ordinance is null and void, because the town had no authority to pass such an ordinance, and because the company was expressly authorized by law to fix and regulate the rate of speed of trains upon its road. There is no grant of power to this town, in express terms, to regulate the rate of speed of railway trains passing through the town, but by its charter (Pr. Laws 1857, pp. 540 and 541) the board of trustees of the town have the power to declare what shall be considered as nuisances, and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants of the town may require. Under these powers we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town. Nor has the railway com-

pany any just ground of complaint that the regulation inter-
fered with the powers conferred upon it in its act of incorpo-
ration or by any other law of the State.   In the exercise of
the privileges so conferred upon it, the company is as much
subject to the police laws of the State as an individual pursu-
ing his business."

This view is confirmed in the North-Western Fertilizing
Company v. Hyde Park, 70 Ill., page 646.   The court say:

"It is urged that railroads in cities and towns are nuisances,
but they are only exercising their franchises in thus operating
them.   If this be true, and we doubt not they may be so
operated as to make them such, still the General Assembly
has, in numerous instances, long after their charters were
granted and the roads were constructed, enacted laws regulat-
ing the speed of trains in cities and towns, or conferred the
power on such municipalities to do the same thing, and thus
prevent the roads from becoming a nuisance; nor are we
aware that this salutary exercise of the police power has ever
been challenged.   Its justness and even necessity, have com-
mended it to all, and it has not been questioned; and this is a
fair illustration of the exercise of the police power over bodies
corporate.   It is on the same principle that railroads are
required to fence their tracks, sound a whistle or ring a bell
at highway crossings, and to come to a full stop before a train
crosses another railroad.   These, and many other duties are
imposed as being necessary for the safety of the people and
their property, and grow out of the implied power that the
General Assembly may restrain these bodies, to promote the
safety of community as it may individuals."

In the case of the Illinois Central Railroad Company v.
Willenborg, reported in 117 Ill. page 203, the company
endeavored to restrain the defendants from constructing,
under Secs. 51 and 52, Chap. 114, of the Revised Statutes,
a private crossing over its tracks at a certain point indicated.

This is a very instructive case, and I quote liberally from
the opinion, and sufficient to enable the court to understand
the point made, and the decision rendered, and the reasons
therefor:

" The point is made, however, that these provisions are not obligatory on this corporation, because they were enacted many years since it received its charter from the State. This is a misapprehension of the law. The regulations in regard to fencing railroad tracks, and the construction of farm crossings for the use of adjoining land owners, are police regulations in the strict sense of those terms, and apply with equal force to the corporations whose tracks are already built, as well as to those thereafter constructed. They have reference to the public security, both as to persons and to property.

" All property devoted to public uses takes on a nature or qualification *quasi* public, and is for that reason held to be subject to legislative control in a greater or less degree, and to which the mere private property of the citizens is not subjected. Rights purely and exclusively private, in no wise affecting others and in no way affecting public morals, are not regarded as being within the control of the police power; nor can mere private property be taken for public uses without making to the owner just compensation; yet the law has always required the citizen to so use his property as not unnecessarily to injure another, and to compel the observance of that rule, even private property may be brought within legislative control to that extent. But where property, whether belonging to a natural person or to a corporation, becomes ' affected with a public interest, it ceases to be *juris privati* only.' Where a party devotes his property to a public use, the community at large acquire such a qualified interest as will subject it to legislative control for the common welfare.

" Accordingly, the property of railroads, and other similar corporations transacting business for and with the public, has been subjected to burdens not imposed on the owners of mere private interests. The distinctions in this regard have been uniformly observed. It is for this reason it has been frequently held that railroad corporations, notwithstanding no such right had been reserved in their charters, may be required to fence their track, to put in cattle-guards, to place upon their engines a bell, and to do many other things for the protection of life and property. No public exigency has ever

City of Lake View v. Tate.

made it necessary to impose such burdens on the citizen exercising no functions or occupations in their nature public or *quasi* public.   Railroad companies are public corporations, in a limited sense, although the right of way, the road-bed, and the track thereon, are for the exclusive use of the owners, over which only their own conveyances are propelled.   All others are excluded.   The traffic, however, on railways, bears no analogy to our notions of travel on an ordinary or street highway.   The uses are totally different and even inconsistent. The one is exclusive in favor of the owner, and the other is open and free to all.

"The common use of railroads by the public could not be otherwise than dangerous.   It is for that reason their use is restricted to the owner.   The fact railroad corporations are granted exclusive franchises to conduct a business in its nature public, must subject them to all reasonable control to secure the public safety and welfare.   It is now the settled law, that railroad corporations are within the operation of all reasonable police regulations, otherwise there would be no security for the life or property of the citizen residing in the vicinity."

Of the power of the legislature or any municipal council or board to adopt police regulations affecting only a portion of the territory over which such body has authority, there seems to be no doubt in this State.

Sub-section 46 of Sec. 32 of Chap. 24, R. S., authorizes city councils and villages to license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor.

Sub-section 62 of the same section provides that the city council, for the purpose of guarding against the calamities of fire, shall have power to prescribe the limits within which wooden buildings shall not be erected or placed or repaired, etc.

Sub-section 81 of the same section authorizes the city council to direct the location and regulate the management and construction of packing-houses, renderies, tallow-chandleries, bone factories, soap factories, and tanneries, within the limits of the city.

Sub-section 82 authorizes the city council to direct the

location, and regulate the use and construction of breweries, distilleries, livery stables, blacksmith shops, and foundries within the limits of the city or village.

These provisions have all been sustained by numerous decisions of the Supreme Court of this State, which it would be a waste of space for me to quote.

In The City of East St. Louis v. Wehrung, 46 Ill. 394, the Supreme Court say :

"But an ordinance which merely discriminates between different localities in a city, according to the advantages they may present for the business for which license is sought, leaving all persons at equal liberty to apply for license in whatever locality they think proper, and making no distinction between persons, but between places only, is open to no objection."

Mr. EDWIN WALKER, for appellee.

The ordinance is void because it discriminates between the two competing railway lines, and indirectly confers upon one, the Chicago and North-Western, the advantage of permission to make quicker time, an advantage which is inestimable from a railroad's point of view. It subjects the defendant company to this great disadvantage without any reason or necessity.

The proof shows conclusively that while for a short distance along one portion of the Chicago and Evanston line, the southeastern part of the city of Lake View is somewhat more thickly settled than it is along the Chicago and North-Western, along the balance, more than two-thirds the entire distance, it is far less thickly settled than along any portion of the North-Western. The North-Western being by far the oldest road, population was naturally attracted all along the line, while the Chicago and Evanston having been built recently, passes through what is in many sections farming land and very sparsely settled. And even in the thickly populated portion of the city the evidence does not show such a preponderance of public travel across the Chicago and Evanston, over the North-Western, as to warrant the passage of any ordinance embracing only the territory through which

the company passes.    The evidence further shows that at the crossings most frequented are gates and flagmen.

It will be noticed from testimony of plaintiff's witnesses as given in the abstract, that in all instances testified to and relied upon to show exceptional preponderance of travel over certain crossings of the defendant, there was a station of defendant company in the immediate vicinity, which occasioned the travel, and that the same was true near stations of the North-Western.    Otherwise no marked difference was proven between the travel over the crossings of the Chicago and Evanston, and the travel over the crossings of the North-Western.

Ordinances, as well as statutes, which are partial, which directly or indirectly confer special favor or advantages on favored parties or individuals, and which are unjust and unreasonable, are unconstitutional and void.    The general rule is stated by Cooley, Const. Lim., 393:

"Equality of rights, privileges and capacities unquestionably should be the aim of the law; and if special privileges are granted, or special burdens or restrictions enjoined in any case, it must be presumed that the legislature designed to depart as little as possible from this fundamental maxim of government.    *    *    *

"Special privileges are always obnoxious, and discriminations against persons or classes are still more so, and, as a rule of construction, are always to be looked upon as probably not contemplated or designed."

The case of Tugman v. City of Chicago, 78 Ill. 405, involved the validity of an ordinance which prohibited the operation of any slaughter house "within the territory in the city of Chicago, bounded as follows, to wit: Fullerton avenue on the north, Thirty-fifth street on the south, Lake Michigan on the east and Western avenue on the west."

When the ordinance was passed several slaughter houses were in operation within the limits.    The appellant, Tugman, erected and operated a slaughter house after the passage of the ordinance.    The validity of the ordinance was contested on the grounds that it was unreasonable and oppressive.    Of

the general principles involved in the case and which are applicable to the case at bar, the court say, page 407:

"Where power is conferred upon the legislative department of a municipal corporation to enact by-laws and ordinances for the better government of the inhabitants of the municipality, the body intrusted with that power, in its exercise, can not enact ordinances that are unreasonable, oppressive, or such as will create a monopoly." An ordinance, therefore, which would make an act done by one penal, and impose no penalty for the same act done, under like circumstances, upon another, could not be sanctioned or sustained, because it would be unjust and unreasonable. Dillon, Municip. Corp., Sec. 256. And the ordinance was held invalid on those grounds.

In Sec. 253, Dillon on Municip. Corp., the general rule is laid down that all ordinances must be reasonable and consistent with the laws and policy of the State; and in Sec. 254, that they must not be oppressive.

Sec. 255 says: "Courts will declare void ordinances that are oppressive in their character."

Sec. 256: "Must be impartial, fair and general. As it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal, and if done by another not so, ordinances which have this effect can not be sustained. Special and unwarranted discrimination, or unjust or oppressive interference in particular cases, is not to be allowed. The powers vested in municipal corporations should, so far as practicable, be exercised by ordinances general in their nature and impartial in their administration."

And the validity of an ordinance is for the court, and not the jury, to determine.

Sec. 261: "Validity is for the court, and not the jury, to determine. Whether an ordinance be reasonable and consistent with the law or not, is a question for the court, and not the jury, and evidence to the latter on this subject is inadmissible. But in determining this question, the court will have regard to all the circumstances of the particular city or corporation, the objects to be attained, and the necessity which exists for the ordinance. Regulations proper for a

large and populous city might be absurd or oppressive in a small and sparsely populated town, or in the country. An unreasonable by-law is void."

In T. W. & W. Ry. Co. v. City of Jacksonville, 67 Ill. 37, an ordinance requiring a flagman at a certain crossing was held void as being oppressive and unreasonable, because unnecessary. Speaking of such regulations and ordinances the court on page 40 says:

" But such regulations must be what they purport to be, police regulations, and must be reasonable where applied to corporations or individuals. What are reasonable regulations and what are subjects of police powers, must necessarily be judicial questions."

The court said that the facts disclosed by the record showed no necessity for a flagman at that crossing, and arrived at the conclusion " that the ordinance under which it was sought to compel the railroad company to maintain a flagman at the point designated is not a reasonable requirement, and is therefore within the constitutional limitations on the exercise of police power."

In Meyers v. C., R. I. & P. Ry., 57 Iowa, 555, the court held an ordinance limiting speed of railway to four miles an hour void as unreasonable. " Under the ordinance in question in this case, it would take three-quarters of an hour, after leaving the corporate limits of Council Bluffs, to pass over three miles of railroad, through agricultural lands fenced on both sides, and reach the inhabited portion of the city; and it would take over one hour and a quarter to reach the terminus of the railroad at the Union Pacific depot. One of the objects of a railroad is to secure quick transportation for freight and passengers. The ordinance in question not only places an unreasonable restriction upon the railways themselves, but it unreasonably and unnecessarily impedes the whole traveling public. No necessity has been shown and none certainly exists, for limiting railways to a speed of four miles an hour for three miles before they enter the inhabited portion of a city and while passing through agricultural lands fenced on both sides. . If all the cities situated along the line

of the defendant's railroad between Council Bluffs and Chicago should enact a like ordinance it is apparent that the time between the two cities would be greatly increased. The ordinance acts as a restraint upon commerce, and, in our opinion, ought not to be sustained. The court did not err in refusing to hold the defendant liable for a violation of it."

The evidence in the case at bar has shown that the northern portion of Lake View through which the defendant's line passes is an unsettled country and no possible necessity exists for limiting speed of trains there.

MORAN, J.  This was an action brought to recover a penalty against appellee, who was an engineer in the employ of the Chicago & Evanston Ry. Co., for running an engine and train of cars through the city of Lake View at a rate of speed forbidden by the ordinance of said city. On the trial in the Criminal Court the finding of the court was not guilty, and the city brings the appeal. The question presented, is the validity of the ordinance alleged to have been violated.

The city of Lake View extends along Lake Michigan north, for a distance of five miles from Fullerton avenue (which divides it from Chicago) to the line of the town of Evanston, and is bounded on the west by Western avenue. Ashland avenue, running north and south through Lake View, divides the territory comprising said city into two nearly equal parts. Two competing railroads run north and south through said Lake View, the C. & N. W. west of, and C. & E. east of Ashland avenue, both roads nearly parallel with said street, which is about midway between them.

The common council of the city of Lake View by ordinance divided the territory comprising the city into two railroad districts, the boundary line between said two districts being Ashland avenue, and each district being five miles long from north to south and about one mile wide. The ordinance provides that no railroad train, locomotive or engine, or car used for the transportation of passengers, shall be run through or within the limits of the "East Railroad District" as described, at a greater rate of speed than ten miles per hour, and

City of Lake View v. Tate.

repeals ordinances which had theretofore been in force, which were general in their provisions, and regulated the speed of trains alike upon all railroads running through the city. The effect of this legislation was to regulate the speed of the C. & E. trains down to ten miles an hour, and leave the C. & N. W. trains to run at any rate of speed the operators of said road saw fit to adopt. The evidence shows that both railroads cross the streets of Lake View on a level with the surface of such streets, and that all things considered, by the operation of the roads at an equal speed of trains, about as much inconvenience and danger will be caused by the one road as by the other, to residents of Lake View and the general public.

There can be no question as to the power of the common council of this municipality to regulate by ordinance the speed of trains upon railroads running through the territory over which it has control for the safety of the public, but such regulating ordinance must be reasonable and consistent with the laws and policy of the State, and must not be oppressive, unequal, or unjust, or partial and discriminating in its operation. Dillon on Munic. Corp., Secs. 253–61.

The question of whether the ordinance is a just and reasonable exercise of the power reposed in the council or not, is a question of law to be determined by the court, upon consideration of all the circumstances, and if the ordinance tends to create a monopoly or makes an act done by one, penal, and imposes no penalty upon another for the same act done under like circumstances, it can not be sanctioned or sustained, because it is unjust and unreasonable. Tugman v. City of Chicago, 78 Ill. 407.

On consideration of the circumstances in this record, we are of opinion that the ordinance in question is obnoxious to the objection that it attempts unjustly and oppressively to discriminate against the C. & E. road, and in favor of its competitor in business.

No reason—at least no reason which is in our opinion at all sufficient—appears for dividing the territory as is done by this ordinance, into two districts, and regulating the speed of trains in one of said districts only.

If the population in said district was dense, and in the other district sparse, a different question would be presented. Whatever the motive which dictated the legislation, the ordinance is one which can not receive the approval of this court, and the judgment of the Criminal Court will therefore be affirmed. T. W. & W. Ry. v. City of Jacksonville, 67 Ill. 37; Meyers v. C. R. I. & P. Ry., 57 Ia. 555; Cooley, Const. Lim., 393; Yeck Wo v. Hopkins, 118 U. S. 356.

*Judgment affirmed.*