MARGARETHA DIERKS

*v.*

COMMISSIONERS OF HIGHWAYS *et al.*

*Filed at Ottawa June 20, 1892.*

1. NUISANCE—*created by a sewer.* A village, by means of sewer pipes, carried most of the sewage of the village in a different course to its natural one, and emptied and discharged the same in a public highway near the premises or farm of the complainant, which soaked into the earth during dry times, and which in wet spells was carried by the water upon such farm. The evidence showed that the discharge of the sewer created such a stench that a person could not work in that locality without being rendered sick at the stomach, and that the continuance of such sewer was detrimental to the comfort and health of those in its vicinity: *Held*, that such sewer was a nuisance, and should be abated.

2. SAME—*when a nuisance may be abated by injunction.* Where the injury resulting from a nuisance is in its nature irreparable, as, when loss of health, loss of trade, destruction of the means of subsistence or permanent ruin to property will ensue from the wrongful act or erection, courts of equity will interpose by injunction in furtherance of justice and the violated rights of property, without first having a trial at law finding the acts, etc., to be a nuisance.

3. EMINENT DOMAIN—*power of commissioners of highways to carry off sewage from an incorporated village.* While the commissioners of highways may exercise the power of eminent domain for the purpose of carrying off surface water from a public road when the public good may require it, they have no authority to exercise such power for the purpose of carrying over an adjacent farm the sewage which an incorporated village or town may deposit upon the highway by drains or other appliances.

4. COMMISSIONERS OF HIGHWAYS—*power limited.* Where commissioners of highways undertake to take in drainage lands under section 8 of the Road and Bridge law of 1883, and thus deprive the owner of his property, they may exercise such power as is clearly conferred by the statute, but no further power can be exercised by them.

5. The commissioners of highways of a town are authorized by law to dig, open and clean ditches upon lands adjoining highways for certain well defined purposes, to-wit, for the purpose of carrying off water from highways, or to drain any slough or pond in the highway. They may not enter upon private lands and dig ditches thereon for any other purposes.

6. SAME—*opening a ditch across private lands—its necessity, how determined.* While a determination by the commissioners as to the necessity of a ditch or drain is required, to give the justice of the peace jurisdiction of a proceeding to assess damages, such determination will not be conclusive on the land owner. When brought before the justice he will be permitted to show, if such is the fact, that no necessity exists for such ditch ; that there is no slough or pond of water in the highway to drain ; that there is no outlet over the land ; that the sole purpose of the ditch is, not to carry accumulated water from the highway, but for the purpose of carrying off sewage, or for some other purpose not contemplated by the statute ; and if the justice wrongfully finds there is a necessity for such ditch, then, after the damages are assessed, on appeal, the same question may be tried in the circuit court.

7. SAME—*assessing damages for opening a ditch across private lands —how jurisdiction of the justice of the peace must be shown.* A justice of the peace will have no jurisdiction in a proceeding to assess damages for the right of commissioners of highways to dig and open a ditch across a private land, unless the commissioners, while acting in their official capacity, shall first determine that a necessity exists for such ditch or drain, and such determination by them can only be shown by the records of their proceedings.

8. SAME— *opening ditch across private lands — measure of damages.* As to the damages arising from the construction of such drain or ditch, whatever the amount may be for the land taken, the land owner will be entitled to recover for that, and if his farm is damaged in any other respect, or its value impaired in any way in consequence of the construction of the drain or ditch. such damages he will be entitled to recover before the jury called to assess damages.

9. SAME—*unlawful acts in opening a ditch—remedy of land owner.* If the commissioners of highways proceed in a manner unauthorized by law, or for a wrongful or unauthorized purpose, to enter upon the land of another adjoining a highway, and dig and open a ditch across the same, the remedy of the owner of the land is by action at law, and a court of equity will have no jurisdiction to enjoin them.

10. APPEAL—*bill to abate a nuisance and enjoin cutting a ditch across private lands—a freehold is involved.* A bill to abate a nuisance to the complainant's farm, caused by carrying and depositing the sewage from a village in an unnatural course to a highway near such farm, and to enjoin the commissioners of highways from unlawfully cutting a ditch or drain across such farm whereby such sewage will be carried over the farm, involves a freehold, and an appeal from a decree dismissing such bill lies directly from the circuit court to this court.

11. MASTER'S REPORT—*exceptions to immaterial matters.* An exception to the master's report because it fails to find a certain fact which is not material to the decision of the case, can not be sustained.

APPEAL from the Circuit Court of Kane county; the Hon. CHARLES KELLUM, Judge, presiding.

This was a bill in equity, brought by Margaretha Dierks, against the commissioners of highways of the township of Addison, in the county of DuPage, and the village of Bensonville, for the abatement of a nuisance caused by the drainage of the sewage of the village upon complainant's farm, and to enjoin the commissioners from entering upon her farm and constructing a ditch across the same to conduct the sewage from a certain highway over her farm.

It is alleged in the bill, Margaretha Dierks, the complainant, is the owner of the west one hundred and forty acres of the north-west quarter of section 13, township 40, north, range 11, east of the third principal meridian, situate in the town of Addison, in the county of DuPage, in the State of Illinois; that said farm, without the nuisance hereinafter set forth, is worth $28,000; that she has lived upon said farm as a homestead for the past thirty-four years; that in the year 1884 the village of Bensonville, one of defendants herein named, was incorporated under the general statutes of the State of Illinois, and included certain described lands. It is also alleged "that the natural course for the surface water and drainage of the said thickly inhabited portions of said village is in a south-easterly direction, and that the drainage thereof, together with the surface water, went in that direction till within the last two years; that during the months of October, November and December, 1887, the village of Bensonville, by its president and trustees, constructed a sewer for the drainage of said thickly inhabited portion of said village; that said sewer consists of twelve-inch tile, and begins at the south side of the railroad track at Center street, in said village of Bensonville, and extends thence east about fifteen rods, to Elmhurst street; thence north ten rods, across the railroad track to Main street; thence west fifteen rods, to Center street;

thence north on Center street for a quarter of a mile; thence east fifteen rods, to Elmhurst street; thence north six rods, to a low place in the highway, where said sewer discharges its contents upon the surface of the ground in the highway, on the west line of the above described farm of your oratrix, and the contents of said sewer then run across said highway onto the above described farm of your oratrix; that at the place where said sewer terminates, the surface water naturally runs from the west, in an easterly direction, onto the above described farm of your oratrix; that said sewer has been a gradually increasing nuisance, and now, in the aforesaid thickly inhabited portion of said village, receives the surface water, and all the drainage from a cheese factory which does a large business all the time, and the drainage from three saloons and two hotels, and a large number of water-closets, and conveys the same, for more than a quarter of a mile, in an unnatural course and direction, and discharges the same upon the surface of the ground, and thereby creates an intolerable nuisance, to the irreparable damage and injury of your oratrix and her said farm."

The bill also sets out in detail that the sewage pollutes, contaminates and poisons the air in and about complainant's dwelling; that the place where said sewer terminates and discharges its contents upon the surface of the ground, and twenty-five rods of said sewer extending therefrom, is in a highway, and is outside the territory of the village of Bensonville, and is in the charge and control of the commissioners of highways of the town of Addison, in the county of DuPage. It is also alleged "that the highway commissioners, combining and confederating with the other defendants named to increase, aggravate, continue and perpetuate said nuisance, and to drain the said sewage of said village of Bensonville onto the said farm of your oratrix, have instituted proceedings before August Asche, a justice of the peace in and for the said county of DuPage, for the purpose of having the damage as-

sessed which your oratrix may sustain by reason of the digging of an open ditch or drain, ten feet wide and four feet deep, from the termination of said sewer across the said farm of your oratrix, as follows, to-wit: beginning at the point on the east side of the highway known as Elmhurst street, opposite Bradley's bridge, which is the west line of said farm of your oratrix; thence in a north-easterly direction, along the course of a small ditch or ravine, to the point where said small ditch leaves the land of your oratrix and passes onto the land of J. H. Laudmeyer; that said proposed ditch is one hundred and thirty rods in length; that your oratrix has been served with summons in said proceeding, and that said summons is made returnable on the 27th day of January, 1890, at ten o'clock A. M.; that said commissioners of highways of the town of Addison are pretending to proceed under section 8 of a statute of the State of Illinois entitled 'Roads and Bridges,' but your oratrix avers that said proposed ditch is neither necessary to open a water-course from any highway to the natural water-course, nor is said ditch necessary for the purpose of carrying off the water from any highway, nor to drain any slough or pond on said highway, but that it is for the sole purpose of conveying said sewage onto the above described farm of your oratrix; that there is no public necessity whatever for the digging of said ditch, except what is caused by the discharge of said sewage, as hereinbefore set forth; that there is no outlet for said proposed ditch at the place where it is proposed that said ditch should terminate, nor anywhere else."

The bill contains various other allegations, but enough have been set out to show its true object and scope.

The defendants, the commissioners of highways of the town of Addison, the village of Bensonville, and the president and board of trustees of the village, put in a joint answer to the bill, in which they deny that the natural course for the surface water and drainage of the thickly settled portions of said vil-

lage is in a south-easterly direction, and that the drainage thereof, together with the surface water, went in that direction till within the last two years; admit that the sewer for the drainage of said village, referred to in said bill, was constructed in 1887, and that said sewer has discharged whatever flowed from it, at the place indicated in said petition, in the highway on Elmhurst street, since said time, which is the fact; admit that the contents of said sewer run across said highway onto the farm of said complainant, and state that it has so continued to run since said sewer was constructed; admit the surface water at said point naturally runs in an easterly direction onto and across said farm; deny each and every allegation in said bill wherein it is alleged that said sewer has been or is a nuisance, in any sense, to said complainant; deny that said sewer runs in an unnatural course and direction.

The highway commissioners, for and on their own behalf, deny that they have combined or confederated with the other defendants, in any way or manner, for the purpose of increasing or perpetuating the alleged nuisance complained of. They allege that they were petitioned to have the ditch or water-way running from Bradley's bridge, on the highway, cleaned out or opened, to allow the water to flow off from the highway; that said commissioners, as such, made personal investigation, and by virtue of the statute, to-wit, section 8 referred to in complainant's bill, decided to have said water-course cleaned out and opened, and in pursuance of said statute applied to a justice of said township to summon said complainant, and also a jury to assess damages, as required by law.

Other matters are set up in the answer, but it will not be necessary to refer to them here.

A replication was filed to the answer, and the cause referred to the master to take the testimony and report the same to the court, together with his conclusions thereon. The master made a report, in which he found "that the complainant is the owner of a valuable farm in the township of Addison, in said

county, described as the west one hundred and forty acres of the north-west quarter of section 13, in township 40, north, range 11, east of the third principal meridian, and that she has resided thereon for more than thirty years last past, she being a widow. I find that the village of Bensonville is a municipal corporation, and was organized in the year 1884, under the laws of the State of Illinois; that said village, in the latter part of the year 1887, constructed a sewer for the drainage of the thickly inhabited part of the said village, consisting of twelve-inch tile, and begins on the south side of the railroad track in Center street, in said village, (and runs as described in the bill,) to a low place in the highway, where said sewer discharges its contents on the surface of the ground in said highway near to said Bradley's bridge, said highway being on the west line of complainant's farm; that at the place where said sewer terminates, the surface water naturally runs in an easterly course under Bradley's bridge and onto the farm of complainant. I further find, from the evidence, that most of the surface water from the most thickly populated part of said village, to-wit, that portion of said village lying south of the railroad track and east of a line two hundred feet west of Addison street, is, by means of said sewer, brought in an unnatural course and direction and caused to flow under said Bradley's bridge and thence upon said complainant's farm, whence, in a wet season or time of freshet, it runs in a north-easterly direction off of said complainant's said farm. I further find, from the evidence, that said sewer receives and conveys the drainage and sewage from the cheese factory, and a large number of water-closets within said portion of said village, in an unnatural course and direction, and deposits same in said highway, whence it passes under said bridge onto the said farm of the complainant, where, in a dry season, it soaks into the land, and causes, what I find from the evidence to be, both a public and a private nuisance. I find that the place where said sewer discharges its contents is

in the public highway, and is under the control of the commissioners of highways of the township of Addison, in said DuPage county, and that the said complainant has never consented to the use of the said farm, or that part thereof so used for the purposes aforesaid, but I find that said commissioners of highways, without the consent of said complainant, have, since the commencement of this suit, entered upon said premises of complainant, and have dug a ditch three or four feet wide and from a foot to a foot and a half deep, across the premises of said complainant, from the point where said drainage and sewage goes onto her said premises at said Bradley's bridge, for the purpose of causing said drainage and sewage to flow in said ditch across the premises of said complainant; that said commissioners of highways claim the right to so enter upon said land and dig said ditch, under section 8 of chapter 121 of the statutes Illinois, entitled 'Roads and Bridges,' and under proceedings had thereunder, and the evidence shows that a summons was issued by justice of the peace of said DuPage county, returnable January 27, 1890, which was served on said complainant, but fails to show that any further proceedings were had in regard to the matter. The evidence in regard to this matter also fails to show that the commissioners of highways, before they entered upon said complainant's land for the purpose aforesaid, asked for the consent of the owner to open a drain on her land, and that they accompanied their request with an offer of just compensation. I therefore conclude that said commissioners had no legal right to enter upon said premises and dig said ditch, and particularly after having been served with notice of this application for an injunction they should have refrained from entering upon said land. In addition to the foregoing I take the law to be, that under said section the said commissioners of highways can not lawfully dig a ditch across the said premises of the complainant for the purpose of conducting said sewage in manner aforesaid, and that said section does not apply to cases like

the one at bar.  I further find and conclude, that the conducting of said drainage and sewage from said portion of said village of Bensonville to said highway, and from thence onto the said premises of the complainant by means of said sewer, is unlawful, and a continuing and irreparable injury to said complainant, and I recommend that a perpetual injunction issue."

Ten exceptions were interposed to the master's report, which the court sustained and rendered a decree dismissing the bill.

Mr. William Nunn, for the appellant.

Mr. L. C. Cooper, for the appellees.

Mr. Justice Craig delivered the opinion of the Court:

A preliminary question has been raised by a motion to dismiss the appeal for the want of jurisdiction.  The motion can not prevail.  Under the authority of *Chaplin* v. *Comrs. of Highways*, 126 Ill. 264, and *Chronic* v. *Pugh*, 136 id. 539, a freehold is involved, and the appeal was properly taken from the circuit to this court.

Ten exceptions were filed to the master's report, which the court sustained, and entered a decree dismissing the bill. The exceptions, so far as they may be regarded material to a proper decision of the case, will be considered.

The first exception seeks to call in question the report of the master because he fails to state that the place where the sewer in question discharged its contents is several feet below the road-bed, and that it flows into a natural water-course. The evidence establishes the fact, beyond question, that the sewer terminates in the highway near Bradley's bridge.   But whether the mouth of the sewer is lower than the surface of the highway has no special bearing on the case, and ·hence is not a matter material to the decision.   There is a depression or ravine at Bradley's bridge, where the master in chancery states

that the water passes under the bridge; but the fact that the master, in the report, fails to state that there is a ravine or water-course at that point is not deemed important.

The second and third exceptions relate to one subject and may be considered together. The master found, from the evidence, that most of the surface water from the most thickly populated part of the village of Bensonville, to-wit, that part lying south of the railroad, track and east of a line two hundred feet west of Addison street, is by means of the sewer conducted in an unnatural direction, and also the sewage from a cheese factory and the sewage from a large number of water-closets is also conducted by the sewer in an unnatural direction, and all deposited in the highway. It is claimed that the surface water and sewage are not carried in an unnatural direction, and hence the master's report on this branch of the case is not sustained by the evidence. There is no conflict in the evidence in regard to the fact that the surface water and sewage of the largest portion of the village is carried off in the sewer and deposited in the highway near Bradley's bridge, where it is allowed to sink into the ground or pass over upon the farm of the complainant, but whether the sewer carries the matter collected, in an unnatural manner, there may be a slight conflict in the evidence. There are some witnesses who testify that the natural flow runs in the direction of the sewer, but a decided preponderance of the evidence tends to prove, before the sewer was constructed surface water flowed off in a south and south-east direction. It is true that the surface of the land is lower at the mouth of the sewer than at the point where the construction of the sewer was commenced; but between the two points the land is elevated, and at one place on the route it became necessary to sink the sewer nine feet in order to secure a proper fall.

H. P. Alexander, a civil engineer of education and experience, testified: "I have run levels over the ground and taken the elevations. I know the locations represented by that

map. That part of the village of Bensonville lying south of the railroad track and east of a line two hundred or three hundred feet west of Addison street and north of Green street slopes south-easterly. The ground on which the cheese factory is located slopes south-easterly. Main street, on the north side of the railroad track, extending as far as Addison street, slopes south-easterly. That part of Elmhurst street east of the houses in the village and south of the railroad, along the line of the railroad, where I took the elevations, slopes south-easterly. In my judgment and opinion the natural course and direction for the surface water and drainage of that part of the village of Bensonville lying south of the railroad track and east of a line two hundred or three hundred feet west of Addison street would be south-easterly." The evidence of this witness is corroborated by many others who were familiar with the location of the village and its surroundings. So far, therefore, as this part of the master's report is concerned, it is fully sustained by the evidence.

The exceptions Nos. 4, 5, 6 and 7 relate to the action and power of the commissioners of highways to construct the ditch across complainant's farm, and may all be considered together.

As a justification of the entry upon complainant's farm by the commissioners of highways, and the construction of a ditch across her premises, defendants rely upon section 8 of an act of the legislature passed June 20, 1883, (Laws of 1883, p. 139,) which is as follows: "The commissioners of highways of the several towns are hereby authorized to enter upon any land adjacent to any highway in their town, for the purpose of opening any ditch, drain, necessary sluice or water-course, whenever it shall be necessary to open a water-course from any highway to the natural water-courses, and to dig, open and clean ditches upon said land, for the purpose of carrying off the water from said highway or to drain any slough or pond in said highway: *Provided,* that unless the owner of

such land, or his agent, shall first consent to the cutting of such ditches, the commissioners shall apply to any justice of the peace in the county in which such road is situated, for a summons, directed to any constable of said county, commanding him to summon the said owner to appear before the said justice * * * not less than five nor more than fifteen days from the date thereof, for the purpose of having the damage assessed which the owner may sustain by reason of the digging or opening of such ditches or drains." The section also provides for a jury to assess the damages, and that the amount awarded shall be paid before the commissioners shall enter upon the premises. The section also authorizes the commissioners to use and employ the road and bridge money of the town for such purpose.

No question has been raised in the record in regard to the constitutionality of the statute, and upon that point we express no opinion. But where the commissioners of highways undertake to take lands under this special statutory authority, and thus deprive the owner of his property, they may exercise such power as is clearly conferred by the statute, but no further power can be exercised by them. The section of the statute is plain, and the power conferred upon the commissioners of highways by the legislature is obvious. That body is authorized to dig, open and clean ditches upon lands adjoining the highway for a certain defined purpose, and that, as declared by the language of the act, is, for the purpose of carrying off water from said highways or to drain any slough or pond in the highway. The language here employed means what it says, and nothing more. While the commissioners may exercise the power of eminent domain for the purpose of carrying off water from a highway when the public good may require it, they have no authority to exercise such power for the purpose of carrying over an adjoining farm the sewage which an incorporated village or town may deposit upon the highway, by drains or other appliances. We think it appar-

ent that this is the proper construction to be placed on the statute.

It will, however, be observed that it is alleged in the bill that the commissioners of highways have instituted proceedings, under the statute, for the purpose of having damages assessed which complainant may sustain by reason of the construction of the ditch. It is also alleged in the bill "that said commissioners of highways of the town of Addison are pretending to proceed under section 8 of a statute of the State of Illinois, entitled 'Roads and Bridges;' but your oratrix avers that said proposed ditch is neither necessary to open a watercourse from any highway to the natural water-course, nor is said ditch necessary for the purpose of carrying off the water from any highway, nor to drain any slough or pond on said highway, but that it is for the sole purpose of conveying said sewage onto the above described farm of your oratrix; that there is no public necessity whatever for the digging of said ditch, except what is caused by the discharge of said sewage, as hereinbefore set forth; that there is no outlet for said proposed ditch at the place where it is proposed that said ditch should terminate, nor anywhere else."

Conceding that this allegation of the bill is true, if the complainant had a remedy at law so far as the action of the commissioners of highways is involved, it is a plain proposition that she had no ground for resorting to a court of equity. Was there "a remedy at law?" In *Chaplin* v. *Highway Comrs.* 129 Ill. 653, it was held that a justice of the peace would have no jurisdiction unless it was first determined by the commissioners of highways, when acting in their official capacity, that a necessity existed for the ditch or drain, and their determination can only be shown by the record of their proceedings. While a determination of the commissioners as to the necessity of a drain or ditch is required before a justice would have jurisdiction of a proceeding to assess damages, at the same time the determination of the commissioners would not be conclu-

sive on the land owner. When he is brought before the justice by a summons, he ought to be permitted to show, if such is the fact, that no necessity existed for the ditch; that there was no slough or pond of water in the highway to drain; that there was no outlet over the land; that the sole purpose of the ditch was, not to carry accumulated water from the highway, but for the purpose of carrying off sewage, or for some other purpose not contemplated by the statute; and if the justice should determine that there was a necessity when none existed, after the damages had been assessed before a jury, on appeal, the same question might be renewed in the circuit court. As to the damages arising from the construction of the drain or ditch, whatever the amount might be for the land taken, the complainant would be entitled to recover that, and if her farm was damaged in any other respect, or its value impaired in any way in consequence of the construction of the drain or ditch, such damages she would also be entitled to recover before the jury called to assess damages. If we are correct in this, it would seem to follow that, in so far as the action of the commissioners in the proceeding before the justice was concerned, there was a remedy at law, and in that regard the bill could not be maintained.

It will be observed that the master found, from the evidence, that most of the surface water from the most thickly populated part of the village of Bensonville was, by means of the sewer, brought in an unnatural course, and caused to flow under Bradley's bridge and thence upon complainant's farm. The master also made the following finding: "I further find, from the evidence, that said sewer receives and conveys the drainage and sewage from the cheese factory, and a large number of water-closets within said portion of said village, in an unnatural course and direction, and deposits the same in said highway, whence it passes under said bridge, onto the said farm of the complainant, where, in a dry season, it soaks

into the land, and causes, what I find from the evidence to be, both a public and a private nuisance. I find that the place where said sewer discharges its contents is in the public highway." The master also made the following finding: "I further find and conclude that the conducting of said drainage and sewage from said portion of said village of Bensonville to said highway, and from thence onto the said premises of the complainant, by means of said sewer, is unlawful, and a continuing and irreparable injury to said complainant, and I recommend that a perpetual injunction issue restraining the said defendants." The exceptions Nos. 8, 9 and 10 call in question the correctness of the above part of the master's report.

As has been seen, the sewage of the village is carried outside of the corporation to a point in the highway opposite the farm of complainant, and there discharged. So far as disclosed by the evidence, the authorities of the village never obtained authority from any quarter to discharge the sewage of the village in the public highway. The master in chancery found, from the evidence, that the deposit of the sewage in the highway was a nuisance, and upon an examination of the evidence we think the finding is fully sustained, as a brief reference to a portion of the evidence will fully demonstrate.

Charles Huber testified, in substance, that he saw the sewage where it is discharged; that "it looked milky, and, if you stirred it up, smelled bad, and was green and white, and in the ditch it was a stagnant pool."

Theo. Coch testified: "The sewage near Bradley's bridge has a very bad smell. I worked there on Mrs. Dierks' land nearly two days, and the smell made me throw up."

William Dierks testified: "I am twenty-four years old. Am a farmer. Live with my mother, the complainant, and help carry on the farm. Have always lived there. Know where the Bensonville sewer discharges its contents, near Bradley's

bridge. It is on the west side of the road in the right of way, south of the bridge. Elmhurst road is on the west line of my mother's farm. The sewer smells so bad in there that a person can't stand it to work along it. It is impossible to stand it in the summer time. It smells worse in the summer than at other seasons in the year. I smell it while in the fields working on the farm."

Jacob Ladraeg: "Pretty near all the houses in the village of Bensonville drain into the sewer. In low water the discharge of the sewage near Bradley's bridge smells bad, and in the summer time it makes a bad smell."

Ida Dierks, the daughter of the complainant, says the sewage has a very disagreeable odor; that she notices it at their house, and that while she is watching cows on her mother's farm it makes her feel like vomiting.

John Koneca: "When I rebuilt the sewer it smelled very bad."

Margaretha Dierks, the appellant: "The sewage discharged from the sewer near Bradley's bridge is whitish green, and muddy, and stinks. It smells most in the summer time. It is a nuisance to me and my family. The children get sick there and we can't hire any one to work there for money. It makes a stench about my house when the wind is in that direction. We can't open the windows on account of the stench, and it will make the water bad for the cattle when the sewage comes down that way."

August Schwerdtfeger: "The discharge of sewage near Bradley's bridge smells pretty bad, and I think it is unhealthy. * * * I would not buy a place with such a nuisance."

The record contains other evidence to the same effect, but we have referred to enough to show the nature and character of the contents of the sewer, and its effect in the locality where its contents are emptied in the public highway. If, as the evidence shows, the discharge of the sewer creates such a

stench that a person can not work on the farm in that locality without vomiting, it is apparent that its continuance will be detrimental to the comfort, the health and lives of those who reside in the immediate locality, and it ought to be abated. It is true that it has not been determined, on a trial by jury, in an action at law, that a nuisance exists; but in a case of this character we do not think that is required. Eden on Injunctions, 259.

In *Wahle* v. *Reinbach*, 76 Ill. 324, which was a bill in equity to enjoin a threatened nuisance, after referring to a number of authorities it is said: "These cases recognize the doctrine, which is supported by all the authorities on this branch of equity jurisdiction, that where the injury resulting from the nuisance is in its nature irreparable, as, when loss of health, loss of trade, destruction of the means of subsistence or permanent ruin to property will ensue from the wrongful act or erection, courts of equity will interfere by injunction in furtherance of justice and the violated rights of property." Here it is manifest that the injury resulting from the nuisance is irreparable. The property of the complainant will be permanently injured, the health of herself and family, and, indeed, that of all in the immediate neighborhood, is imperiled, and the facts bring the case within the rule indicated in the case last cited.

We think the court erred in sustaining exceptions eight, nine and ten, and erred in dismissing complainant's bill.

The decree will be reversed, and the cause remanded for further proceedings in conformity to this opinion.

*Decree reversed.*