## Chicago Great Western Railway Company v. Town of Leaf River.

### Gen. No. 4,820.

1. CROSSING—*what essential to recovery of expenditures for repairs upon.* In order that a town may recover of a railroad expenditures by it made in repairing a crossing, it must appear as a jurisdictional foundation for the admission of the notice served upon the railroad to repair that the commissioners of highways had officially passed upon the crossing and directed the service of such notice.

2. COMMISSIONERS OF HIGHWAYS—*how official acts of, must be shown.* The official acts and proceedings of commissioners of highways must be shown by the record only, and such record cannot be contradicted, aided or supplemented by parol.

Action commenced before justice of the peace. Appeal from the Circuit Court of Ogle county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1907. Reversed, with finding of facts. Opinion filed August 6, 1907.

J. B. STEPHENS, for appellant; A. G. BRIGGS, of counsel.

J. C. SEYSTER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a suit begun before a justice of the peace by the town of Leaf River, Ogle county, to recover from the Chicago Great Western Railway Company the sum of $177.10 and costs, under a claim that the commissioners of highways of the town of Leaf River had expended that amount in the repair of a highway crossing and approaches over the defendant's railway at Egan station. The case was taken by appeal to the Circuit Court, where a jury returned a verdict for plaintiff for $124.80. Motions for a new trial and in arrest of judgment were overruled, and judgment was rendered on the verdict. The defendant appeals.

There is no dispute over the following facts: About

January 1, 1906, a notice signed by the commissioners of highways of the town of Leaf River was served upon the station agent of appellant at Egan, notifying the appellant that the crossings and approaches where the public road crosses said railroad at Egan "are in need of repair and the undersigned direct you to repair and build such crossings and approaches as follows: said crossings to be thirty-two (32) feet in width extending for a distance along the length of the railroad sixteen feet each way from the center of the highway, commencing two planks north of the main track, and planks to be placed between the rails of the main track, so as to make entire solid planking between the rails of the main track, the planks to be placed between the main track and the side track so as to make solid planking between said tracks and planking to be placed between the rails of the side track so as to make solid planking between said rails, and planking to be extended two planks south of said side track. All approaches in the northerly and southerly side of said tracks to be macadamized on both sides. The northerly approach at said track crossings to be three rods long and the south approach to be two rods long, and the approaches to be thirty-two feet in width. You are further notified to construct and repair said crossings and approaches within thirty days," and that in case of failure to do so the town would construct the same and demand of the railroad company the expenses and penalty according to the statute.

Egan is a small hamlet consisting of depot buildings, elevator, creamery, lumber yard, postoffice, blacksmith shop and a few residences. The public highway that crosses the railroad runs north and south. The railway runs practically northwest and southeast, so that it crosses the highway at an angle of about forty-five degrees. There are three tracks; the north track is the main track; the next track is called the passing track. There is a space of nine feet between these two

tracks. The third track is thirty-two feet south of the passing track, and is called the house track.

The appellant did not construct the repairs as it was notified to do, and in June the appellee constructed the repairs by planking thirty-two feet in length parallel with the track, between the rails of the main track, the space between the main track and the passing track and between the rails of the passing track. A plank was also laid on the north side of the main track. Appellant admits in its argument that appellee made that part of the repairs requiring planking, so that they comply with the notice. The macadamized approaches, however, were built a width of only sixteen feet, and were made of crushed stone with a coating of sand. Crushed stone was also put between the passing track and the elevator track. Plank was also placed a length of thirty-two feet on the outside of each rail of the third track and between them. The macadamized approaches were extended 100 feet south of the third track, but only two rods north of the main track.

The crossing as built by the railway had a plank on each side of the rails, and the remainder of the space between the rails and between the tracks had been filled with a mixture of cinders and gravel. Appellant claims it repaired the crossing after notice, but not as directed by the notice. From the angle at which the railroad crossed the highway and the nature of the ground, the crossing was particularly dangerous in muddy times. One of the commissioners answered a question asked on behalf of appellee: ''In my judgment that crossing as we fixed it made it safe.'' There was other evidence on behalf of appellee to the same effect.

The court admitted in evidence the notice to repair the crossing, over the objection of the appellant, and this is assigned for error. It is insisted that as a jurisdictional foundation for the admission of the notice, and preliminary to offering it, the appellee

should have proved there was a record of the commissioners of highways containing their official action regarding this crossing and directing the serving of the notice, and that without such a record this judgment cannot stand.

The board of commissioners of highways of a town are a *quasi* municipal corporation, and can only act as a body and not as individuals. McManus v. McDonough, 107 Ill. 95. Sec. 10 of chap. 121 of the statute, the Road and Bridge Act, provides that the commissioners "shall keep a record of all the *official acts and proceedings* of the board in a well-bound book to be provided for that purpose, which record shall be signed by the president and clerk. Said board shall hold regular meetings at such times as occasion may require. * * * and *no official business* shall be transacted by the board *except at a regular or special meeting."* This section of the statute is mandatory. People *ex rel.* v. Madison County, 125 Ill. 334; Chaplin v. Commissioners, 129 Ill. 651; O'Connell v. C. T. R. R. Co., 184 Ill. 308. The official acts and proceedings of the commissioners can be shown by its record only, and cannot be contradicted, aided or supplemented by parol. People v. Supervisors, *supra;* Chaplin v. Commissioners, *supra;* Gillet v. Taylor, 48 Ill. App. 403; C. I. & W. R. R. Co. v. People, 205 Ill. 538. It is held in People *ex rel.* v. Madison Co., *supra,* that highway commissioners cannot demand aid from a county in building a bridge under sec. 19 of the Road and Bridge Act without first making a matter of record findings of the board that the bridge is a necessity, that its construction would be an unreasonable burden on the town, and that its cost will be more than can be raised in one year by ordinary taxes for bridge purposes, for the reason that a record of such findings is jurisdictional. It is held in Chaplin v. Highway Commissioners, *supra,* and Dierks v. Comrs., 142 Ill. 197, that a justice of the peace would have no jurisdiction in a proceeding begun by highway commissioners to assess

damages to open a ditch, unless it was first determined by the commissioners of highways when acting in their official capacity that a necessity existed for the ditch and that their determination can only be shown by the record of their proceedings. Before the public authorities having charge over any street can demand of a railway that it station a flagman at a street crossing, as required by sec. 99 of the Railroad and Warehouse Act, the authorities must first pass an ordinance declaring the necessity of such flagman. Village of Altamont v. B. & O. S. W. Ry., 184 Ill. 47. It is held the same rule of law is to be applied to a board of highway commissioners in respect to their corporate action as is applied to other municipal corporations. People *ex rel.* v. Madison County, *supra.* Sec. 71 of chap. 114 of the statute, the Railroad and Warehouse Act, provides that railroads shall construct and maintain highways, crossings and approaches, so that at all times they shall be safe. When a railroad company fails in its duty concerning crossings, sec. 72 provides, it shall be the duty of the proper public authorities, having charge of such highways or streets, to notify in writing the nearest agent of the condition of the crossing or approaches and *direct the same to be repaired in such manner as* they shall deem necessary, etc. Sec. 73 provides that on failure of the railroad to repair such crossing or approaches within thirty days, "said public authorities shall forthwith cause such construction, alteration or repairs to be made." The next section provides for the recovery of the expenses of such repair, and also a fine of $100.

Applying the rules deducible from the decisions upon analogous questions, and the express provision of the statute that a record shall be made "of all the official acts" of the board, it would seem that it was necessary that the board, before giving any notice, must first, by some resolution of record, find the unsafe condition of the crossing, together with the necessity of repair, and in the same record direct how the

crossing should be altered or repaired. The board, in directing the change or repair of this crossing, was acting as a legislative body. They were by their legislative authority providing for the expenditure by the railway of its money for the safety of the public. It was jurisdictional to issuing and serving any notice of the change required, that a record should be made of the necessity and details of the improvement.

Appellee has cited and relies on Town of Old Town v. Dooley, 81 Ill. 255, and Interstate Indep. Tel. & Telg. Co. v. Town of Towanda, 123 Ill. App. 55, as authority for its position that a record of the board was not a prerequisite to serving the notice. Those cases are clearly distinguishable from the present case, because in neither of those cases was the board expending town money or ordering how other parties must expend their money for the benefit of the public. They were affirmative voluntary acts of third parties that were complained of, and not an attempt to force third parties to take some action in the interest of the public desired by the board.

The point is also made that the notice called for an unreasonable improvement and that the repairs made by the commissioners were not such as were required by the notice. The notice required the macadamized approaches to be thirty-two feet wide, the north approach to be three rods long and south two rods long. The commissioners only made the approaches sixteen feet wide, the north approach only two rods long and the south 100 feet long. The section of the statute which authorizes the commissioners to make the repairs on failure of the railway to comply with the notice, provides, "then said public authorities shall forthwith cause *such* construction, alteration or repair to be made." The word *such* can only refer to the manner directed in the notice. The facts that the commissioners by only constructing the approaches one-half the width and the north one only two-thirds the length the notice required, and that appellee's evidence shows the

crossing as so constructed was safe, show that the notice was unreasonable, and the reasonableness of the notice is a question for the court. T., W. & W. Ry. Co. v. City of Jacksonville, 67 Ill. 37; City of Lake View v. Tate, 130 Ill. 247; Harris v. People, 218 Ill. 439. If the notice to repair the crossing had only called for the making of such repairs as the appellee constructed, *non constat* but that appellant might have complied with such notice. We hold that before the town can recover, there must be a record made by the board of the necessity and details of the alteration or repairs, and when the alteration or repairs are made by the town because of the failure of the railroad to comply with the notice, the town must make the alteration or repairs substantially as required by the notice, in analogy to improvements by special taxation or assessment, and the repair or alteration must be reasonable.

The judgment is reversed.

*Reversed, with finding of facts.*

Finding of facts, to be incorporated in the judgment of the court:

There was no record made by the board of highway commissioners requiring the repair of the crossing; the appellant did not make the repairs called for by the notice, and the board did not make the repairs such as required by the notice.