JOHN A. ROBB et al.

v.

THE VILLAGE OF LAGRANGE et al.

*Filed at Ottawa October 11, 1895.*

| | |
|---|---|
| 158 | 21 |
| 159 | 392 |
| 158 | 21 |
| 66a | 50 |
| 158 | 21 |
| 105a | 4565 |

1. WATERS—*rights of owner of higher tract as to flow of water.* The owner of a higher tract of land has the right to have the surface water coming naturally upon his premises pass off through the natural drains upon and over lower lands, and may, by ditches, drain his own land into the natural channel, even if the quantity of water thrown upon the lower lands is thereby increased.*

2. MUNICIPAL CORPORATIONS—*village cannot, under power to drain, establish a nuisance.* A village or city cannot, by virtue of its right to drain surface water over lower lands, run its sewage beyond the corporate limits upon premises of an individual owner, where such sewage is offensive and detrimental to health.

3. SAME—*pollution of stream by sewage.* A municipal corporation cannot empty its sewage into a stream of water, where the result is the pollution of the stream.

4. INJUNCTION—*to restrain drainage by city—clear proof required.* To justify the granting of an injunction to restrain the drainage by a city of its sewage over the premises of another and into a stream, evidence that a nuisance is created must be clear and satisfactory, where the nuisance has not been judicially established.

5. JUDGMENTS AND DECREES—*when dismissal of bill for injunction should be without prejudice.* Dismissal of a bill to enjoin the construction of a sewer draining upon individual property or into a stream, upon the ground that there is no sufficient evidence to show that a nuisance will be created, should be without prejudice, where the bill is brought too soon to fully determine results.

*Robb* v. *Village of La Grange,* 57 Ill. App. 386, modified.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

---

*The rights as to flow of surface water are considered, with an analysis of the somewhat conflicting decisions, in a note to *Gray* v. *Mc Williams,* (Cal.) 21 L. R. A. 593.

REED, BROWN & ALLEN, for appellants:

A riparian owner may not lawfully discharge foul and discolored water into a stream that passes through the land below.' Such owner is entitled to have the stream in its natural purity. *Indianapolis Water Co.* v. *Strawboard Co.* 57 Fed. Rep. 1000.

An examination of the following cases fails to develop an instance where a stronger appeal for redress has existed, and yet in all relief was granted: *Duke of Buccleuch* v. *Cowan*, 5 Maple, 214; *Crossley & Sons* v. *Lightowler*, L. R. 3 Eq. 279; *Merritt* v. *Parker*, Coxe, (N. J.) 526; *Townsend* v. *Bell*, 17 N. Y. 210; *Chipman* v. *Palmer*, 77 id. 51; *Anderson* v. *Henderson*, 124 Ill. 170; *Dayton* v. *Drainage Comrs.* 128 id. 271; *Plumleigh* v. *Dawson*, 1 Gilm. 552; *Curtis* v. *Railway Co.* 98 Mass. 430; *White* v. *Chapin*, 12 Allen, 516; *Holsman* v. *Bleaching Co.* 14 N. J. Eq. 335; Gould on Waters, sec. 223; *Merrifield* v. *Lombard*, 13 Allen, 16; *Pennington* v. *Coal Co.* 5 Ch. Div. L. R. 769.

Where acts of parliament empowered a water-works company to take water from a stream, and gave it certain rights against mill owners on the stream with respect to the quantity of water to be taken, but saved all other rights, the company was held to have no power to foul the water so as to interfere with the rights of mill owners, and an injunction was granted to restrain the pollution. *Goldsmid* v. *Tunbridge Wells*, L. R. 1 Eq. 161; *Attorney General* v. *Richmond*, 2 id. 306; *Attorney General* v. *Colney Hatch Asylum*, L. R. 4 Ch. App. 146; *Attorney General* v. *Leeds*, 5 id. 583; *Holt* v. *Rochdale*, L. R. 10 Eq. 354; *Attorney General* v. *Cockermouth Board*, 18 id. 172; *Attorney General* v. *Hackney Board*, 20 id. 626; *Attorney General* v. *Acton Board*, 22 Ch. Div. 221; *Metropolitan Board* v. *Railway Co.* 17 id. 246; *Attorney General* v. *Luton Local Board*, 2 Jur. 180; *Bidder* v. *Croydon Board*, 6 L. T. 778; *Attorney General* v. *Kingston*, 34 L. J. Ch. 481; *Attorney General* v. *Halifax*, 39 L. J. Eq. 129; *Railway Co.* v. *Tunstall Local Board*, id. 131; *Attorney General* v. *Basingstoke*, 45 L. J. Ch. 726; *Oldaker* v.

*Hunt,* 19 Beav. 485 ; *Manchester* v. *Workshop Board,* 23 id. 198 ; *Attorney General* v. *Birmingham,* 4 K. & J. 528 ; *Attorney General* v. *Public Board,* 1 H. & M. 298 ; *Belknap* v. *Belknap,* 2 Johns. Ch. 463 ; *Haskell* v. *New Bedford,* 108 Mass. 208 ; *Woodruff* v. *Fisher,* 17 Barb. 224; *Rolling Mills* v. *Cambridge,* 117 Mass. 396 ; *Morse* v. *Worcester,* 139 id. 389 ; *State* v. *Bergen Freeholders,* 46 N. J. Eq. 173 ; *Columbus* v. *Woolen Mills Co.* 33 Ind. 435 ; *Topeka W. S. Co.* v. *Potwin Place,* 43 Kan. 404.

Trespass also lies.    *Beach* v. *Elmira,* 11 N. Y. 913.

Equity, whatever may have once been its attitude on this class of questions, is now ready and willing to take jurisdiction and decide, where it is shown that a nuisance exists, without the farce of a preliminary investigation or verdict at law, and to extend its protecting hand by enjoining the injurious acts. *Iliff* v. *School Directors,* 45 Ill. App. 419; *Wahle* v. *Reinbach,* 76 Ill. 322; *Ross* v. *Butler,* 19 N. J. Eq. 294; *Cleveland* v. *Gas Light Co.* 20 id. 205; *Evans* v. *Reading Co.* 160 Pa. St. 209; *Smith* v. *McDowell,* 148 Ill. 5; *Wendlandt* v. *Cavanaugh,* 85 Wis. 256; *Hennessey* v. *Carmody,* 50 N. J. Eq. 616; *Kirkwood* v. *Finnegan,* 95 Mich. 543; *Page* v. *Lumber Co.* 53 Minn. 492; *Hill* v. *New York,* 139 N. Y. 495.

W. R. BURLEIGH, and RICHARD PRENDERGAST, for appellees:

The existence of a nuisance not having been established by a suit at law before bringing a suit in chancery, the fact of nuisance must be clearly established before an injunction will lie.    *Nelson* v. *Milligan,* 151 Ill. 466.

The complainants have a complete and adequate remedy at law. The nature of the Robb property is such that any injury which it may sustain from the cause complained of may be readily estimated and compensated in damages. *Railroad Co.* v. *Loeb,* 118 Ill. 203; *Nelson* v. *Milligan,* 151 id. 467; *Valentine* v. *Webb,* 84 Mich. 38; Story's Eq. Jur. sec. 925; *Attorney General* v. *Nichol,* 16 Ves. Jr. 342; *Zabriskie* v. *Railway Co.* 13 N. J. Eq. 314; *Attorney General*

v. *Stewart,* 20 N. J. 416; *Dana* v. *Valentine,* 46 Mass. 8; *Laney* v. *Jasper,* 39 Ill. 46; *Holsman* v. *Water Co.* 14 N. J. Eq. 347.

Where the effect of the injunction prayed for will be to destroy large and valuable business, or delay or restrain necessary improvements, the injunction should not be granted unless it is most clearly shown that the legal remedy is entirely inadequate. Gould on Waters, sec. 220; *New Boston* v. *Coal Co.* 54 Pa. St. 164; *Sanderson* v. *Coal Co.* 86 id. 401; 112 id. 370; 113 id. 126; *Morgan* v. *Binghampton,* 102 N. Y. 500.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This was a bill in equity, brought by John A. Robb and Isaac S. Brinkerhoff, to enjoin the village of La-Grange from constructing an outlet sewer, commencing at the present outlet of a main sewer in Cossitt avenue, at the intersection of Bluff avenue; thence running east along said avenue to East or Bismark avenue; thence north to Ogden avenue, and thence from the intersection of Ogden and East or Bismark avenue east on the south side of Ogden avenue 4300 feet to Kuntz's bridge, so-called. The sewer, from its commencement to the intersection of Ogden and East avenues, was to be constructed of brick, and from the latter point to Kuntz's bridge the ordinance provided for a wooden box eight feet wide and four feet high, to be divided by a partition in the center. At Kuntz's bridge the sewer was discharged into an open run-way, running in a north-easterly direction from the bridge across lands of Charles L. Colby and the complainant Robb, into Salt creek.

The complainant John A. Robb is the owner of the west half of the north-west quarter of section 2, township 38, north, range 12, east, containing 46$\frac{47}{100}$ acres of land, which is improved with a brick dwelling, a barn and outhouses. It is fenced, and has been and is used for farming, and the appellant Brinkerhoff has leased the

premises. This land is about a mile east of the village of LaGrange, which is a suburban town on the Chicago, Burlington and Quincy railroad, with a population of about 4000. Salt creek is a stream of water about twenty or thirty miles in length. Its general course is from north-west to south-east, emptying into the Des Plaines river opposite the village of Riverside, about a half mile below complainant's land. Complainant's land lies on both sides of Salt creek and on both sides of the runway, which runs from the mouth of the sewer at Kuntz's bridge into Salt creek. The sewer system of the village of LaGrange, when completed as provided in the ordinance under which it was authorized, will carry all the surface water from the village and the sewage of the village over and across complainant's land and empty the same into Salt creek. It is contended in behalf of the complainant that the completion of the sewer system as proposed will result in the discharge of the entire sewage of the village of LaGrange, in an undiluted condition, upon these lands and across these into Salt creek, and will constitute a nuisance, and very much aggravate and increase the present nuisance, and with the growth of the village of LaGrange the quantity of the sewage discharged will be increased, the value of the premises destroyed, and the emptying of the sewage into Salt creek will pollute its waters and render them unfit for use.

On the hearing in the Superior Court the witnesses of the respective parties appeared in person and testified, and the court, while the cause was on hearing, at the request of both parties, went upon the *locus in quo* and personally viewed the premises where the sewer was located and being constructed. After the view thus made, and after hearing all the evidence, the court entered a decree "that this cause be and the same is hereby dismissed at the complainant's cost for want of equity, with prejudice for and during the period of five years next hereafter, and without prejudice thereafter, and without

prejudice at any time to the right of the complainant to bring an action at law." The decree of the Superior Court was affirmed in the Appellate Court.

There is a conflict in the evidence as to the quantity of water that passed over the lands of Colby and complainant along the run-way into Salt creek, the witnesses for the defendant testifying that the waters made quite a stream, which contained small fish, and which did not cease to run except in extremely dry weather, while, on the other hand, the evidence of complainant tends to prove that the small stream or run-way across Colby's and complainant's lands in very rainy weather contained quite a volume of water, but in the summer, when the rain ceased, the stream went dry. It will not, however, in the view we take of the case, be necessary to determine which one of the parties is correct on this branch of the case.

We think it is plain from the evidence that the surface water in and around LaGrange for a number of years had a natural outlet over and across the lands of Colby and complainant into Salt creek. In testifying in regard to the fall of the sewer, Louis Enricht, a civil engineer, said: "I have had charge of the construction of this box-drain from its commencement. It was made of planking, with an inside coating of tar. That is the portion now completed, and is 4375 feet long. It has a fall of 2.5 feet. We contemplate a duplicate brick sewer from Ogden avenue to the sewer mouth, on East avenue. In putting in the box-drain we opened springs about twelve feet east of East avenue. The fall between the eastern terminus to the banks of Salt creek is 7.8 feet. That fall of 7.8 feet makes a very rapid flow. I had occasion to go along the bed of this stream last year. There was also a flow of water. It has not been dry, to my knowledge, in the last sixteen months. There is a constant good flow and a limestone bottom. At the mouth of the box-sewer the water is clear enough, and you can see the rocks on the

bottom.    There are some pools in the creek that runs from Kuntz's bridge to Salt creek, and you can not see the bottom.    In the north-easterly half the water shoots down more readily into Salt creek than in it southerly. There might have been a little smell in that creek, but nothing offensive." There was other evidence of a similar character introduced.

In this State the same rule is applied to surface water flowing in a regular channel that is applied to a watercourse.    The owner of the dominant heritage or higher tract of land has the right to have the surface water falling or coming naturally upon his premises pass off the same through the natural drains upon and over the lower or servient lands, and the owner of the dominant heritage may, by ditches, drain his own land into the natural channel, even if the quantity of water thrown upon the servient heritage is thereby increased. (*Peck* v. *Herrington*, 109 Ill. 611.)    Under this rule, adopted in the case cited and in other cases in this court, the village of LaGrange, being located on higher lands than the land occupied by complainant, had the undoubted right of drainage of its water in a natural channel over complainant's land into Salt creek, and had the village confined its drains to carrying off surface water, or other waters which proper drainage required in order to improve the streets and render the lots of the village more suitable for building purposes, there would be no ground for complaint.    But the village did not confine its drains to water, but they were constructed for carrying off the sewage of the village as well as surplus waters, and the question presented is, whether it had the right to carry the sewage of the village over complainant's land and empty it into Salt creek,—a stream of water which flows through his land.

In *Dierks* v. *Comrs. of Highways*, 142 Ill. 197, where a village, by means of sewer-pipes, carried its sewage beyond the limits of the incorporation and discharged the

same on a public highway near the premises of one own-
ing a farm, the evidence showing that the discharge of
the sewage created a stench which was detrimental to
the comfort and health of the neighborhood, this court
held the drainage of the sewer a nuisance, and that it
should be abated.

In *Village of Dwight* v. *Hayes*, 150 Ill. 273, where a bill
was brought to restrain the village from constructing a
system of sewers which would discharge the sewage of
the village into a stream of water running through the
complainant's land, we held that the land owner was
entitled to an injunction to restrain the village from
polluting the water in the stream. In the decision of
the case it is, among other things, said (p. 279): "That
the sewage of a village of 1600 inhabitants discharged
into a small stream will materially pollute the water of
the stream and render it unfit for domestic use for at
least a few rods below the point of discharge, is a propo-
sition too plain, and too thoroughly verified by ordinary
experience and observation, to admit of reasonable
doubt."

In both of the cases cited it appeared that the acts
and doings of the village were sufficient to create a nui-
sance, and where a nuisance was created there was a
remedy by bill in equity. See, also, *Price* v. *Oakfield High-
land Co.* 58 N. W. Rep. (Wis.) 1039; *Chipman* v. *Palmer*, 77
N. Y. 51

Under the ruling of this court, which we believe to be
in harmony with the current of authority bearing on the
question, a village or city cannot run its sewage beyond
the incorporated limits and empty it on the adjoining
premises of some land owner, where a stench is created
and the sewage is detrimental to the health of the neigh-
borhood. Nor will a village or incorporated town be
permitted to empty its sewage into a stream of water
where the result is the pollution of the stream. In other
words, if a nuisance is established by carrying the sew-

age of a village, incorporated town or city in a drain or sewer beyond the limits of the incorporation, a bill in equity will lie on behalf of any person injured. The real question in the case then is, whether the evidence is sufficient to establish a nuisance. If the evidence of the complainant were considered alone, it might be regarded as sufficient to sustain the bill, but a large number of witnesses were introduced on behalf of the defendant who testify that there is no smell or stench arising from the sewer. There is therefore so much conflict in the evidence that we are unable to hold the allegations of the bill proven by such clear and satisfactory evidence as is required in a case of this character, where a nuisance has not been established by a judgment in an action at law. Moreover, the evidence is not only conflicting on the main point in controversy, whether a nuisance was created, but, as has been seen, the court viewed the premises, and after a personal inspection arrived at the conclusion that what had been done did not constitute a nuisance. In view of the conflict of the evidence, and in view of the further fact that the court inspected the premises, we are not prepared to reverse the decree on the sole ground that the decree is contrary to the evidence. It will be observed, however, that this bill was brought before the sewer was completed, and at the time of the trial it may not have been in operation long enough to determine fully whether it would result in a nuisance or not. Under such circumstances we think the bill should have been dismissed without prejudice.

The decree of the Superior Court will be so modified that the bill will be dismissed without prejudice.

*Decree modified.*