## Chicago & Alton Railroad Company v. The Village of Gardner.

1. LACHES—*As to Matters not Per Se Nuisances.*—Where a railroad
embankment, not in itself a nuisance, but occasionally an obstruction
to water, had been suffered to exist in the same condition for forty
years, *it was held* that the village through which it passed, having ac-
quiesced therein without complaint, had, by its own *laches*, lost its right
to object.

2. NUISANCES—*Jurisdiction in Equity.*—A court of equity has no ju-
risdiction over the subject of a nuisance, except in extraordinary cases,
where the case is clear and free from all substantial doubt as to the right
of relief, for in doubtful cases the party will be turned over to his legal
remedy.

3. SAME—*Jurisdiction at Law in the First Instance.*—It must be a
wrong and mischievous case of pressing necessity, or the right must
have been previously established at law, for the defendant ought not
to be deprived of his constitutional right of trial by jury.

**Bill for Injunction.**—Appeal from the Circuit Court of Grundy
County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in
this court at the December term, 1895. Reversed and remanded with
directions. Opinion filed June 1, 1896.

GEORGE S. HOUSE, attorney for appellant.

The question as to what is a nuisance is one peculiarly
fitted for the investigation of a jury, and in an ordinary
case where the event of a suit in equity depends upon a
legal right, the right must be ascertained in an action at law
before any relief can be granted in a court of equity. 2
Story's Eq. Jurist, Sec. 925 b. See also Oswald v. Wolf;
129 Ill. 200; Burnham v. Kempton, 44 N. H. 78; Rhea v.
Forsyth, 37 Pa. St. 503; Gardner v. Village of Newburgh;
2 Johns. Ch. 162; Van Bergen v. Van Bergen, 3 Johns. Ch.

282; Carlisle v. Cooper, 21 N. J. Eq. 576; Nelson v. Milligan et al., 151 Ill. 462.

Where there is good reason to conclude that the nuisance complained of is temporary, the court will not grant a temporary injunction in order that the plaintiff may bring an action at law, which may be nugatory. Story's Equity, Sec. 925c; Laney v. Jasper, 39 Ill. 46; Dunning v. The City of Aurora et al., 40 Id. 481; Bliss v. Kennedy, 43 Id. 67; Town of Lake View v. Letz, 44 Id. 81; Wahle v. Reinbach, 76 Id. 322; Oswald v. Wolf, 129 Id. 200; Robb v. Village of La Grange, 158 Ill. 21.

S. C. Stough, attorney for appellee.

Equity will restrain a private nuisance by injunction in order to prevent oppressive or interminable litigation, or a multiplicity of suits, or where the injury is of such a nature that it can not be adequately compensated by damages, or is such, from its continuous or permanent mischief, as must occasion a constantly occurring grievance which can not be prevented otherwise than by injunction. Parker v. Winnipiseogee, 2 Black. 545; Oswald v.Wolf, 129 Ill. 200.

A court of equity has jurisdiction to restrain an existing public nuisance at the suit of the State, the people, the municipality, or any proper officer representing the commonwealth, but such public nuisance must be established by clear evidence before the preventive remedy will be granted. 3 Pomeroy's Equity Jur., Sec. 1349, 1350.

Where plaintiff brings suit for injury to his real property caused by a nuisance, and alleges its permanency, he thereby consents to its continuance, and accepts the judgment as compensation for its continuance, and such recovery gives the defendant a permanent right to do the acts which constitute the nuisance, and is in effect a condemnation. Chicago & E. I. R. R. Co. v. Loeb, 118 Ill. 203; Chicago & E. I. R. R. Co. v. McAuley, 121 Ill. 160; Schultz Brewing Co. v. Compton, 142 Ill. 511.

The general assembly has vested in cities, villages and

towns the right to control the use of highways, streets and public grounds within their respective limits, and they are invested with authority in this respect, to file bills to prevent and remove obstructions from the streets, highways and public grounds under their control. Metropolitan City Ry. Co. v. Chicago, 96 Ill. 620, 628; Chicago, B. & Q. R. R. Co. v. City of Quincy, 32 Ill. App. 377.

It is the duty of cities to keep their streets in good repair and condition, and for failure in that respect they are held responsible in damages for any injury suffered thereby. They should have power to keep the streets free and clear from obstructions, and must be permitted the use of the proper remedies to that end. Metropolitan City Ry. Co. v. Chicago, 96 Ill. 620, 630.

Equity will assume jurisdiction to remove a public nuisance on behalf of the crown, notwithstanding the crown might have proceeded at law, and notwithstanding a question of fact may be raised to be tried. Metropolitan City Ry. Co. v. Chicago, 96 Ill. 620.

By irreparable injury is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, nor necessarily great injury or great damage; but that species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other; and because it is so large on the one hand or so small on the other, or is of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law. Wahle v. Reinbach, 76 Ill. 322.

To prevent an injury caused or threatened by an improper diversion of surface water, the remedy by injunction is clearly established. Hotz et al. v. Hoyt, 34 Ill. App. 488; Laney v. Jasper, 39 Ill. 46.

Equity can prevent a threatened nuisance or remove an existing one; it may grant remedial as well as preventive relief. Laney v. Jasper, 39 Ill. 46.

A railroad company has no right, by an embankment or other artificial means, to obstruct the natural flow of the

surface water, and thereby force it in an increased quantity upon the lands of another, and if it does so, it is liable for any injury that the owner of the land may sustain by reason thereof.   T. W. & W. Ry. Co. v. Morrison, 71 Ill. 616; East St. Louis & C. Ry. Co. v. Eisentraut, 134 Ill. 96.

The duty of a railroad company does not end with the construction of approaches to a bridge and crossings and keeping the same in repair.   When there is a change of condition it is bound to conform to new circumstances and conditions arising in the future, in altering such places, from time to time, as it becomes necessary.   Ohio & M. Ry. Co. v. Town of Bridgeport, 43 Ill. App. 89.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a bill in equity seeking to enjoin the continuance of an alleged nuisance in diverting water from its natural course, to the damage of the streets of the village.

This bill was originally exhibited by the village of Gardner, and the highway commissioners of the township of Greenfield, Grundy county, Illinois, wherein they aver that the acts complained of constituted a nuisance both public and private, and the relief sought was the abatement of the nuisance, by a decree of a court of equity requiring and compelling the defendant to do certain particular acts specified in the bill.

At the hearing, the bill was dismissed by the highway commissioners, and the suit proceeded thereafter to final decree with the village of Gardner as sole complainant.

The village of Gardner is incorporated under the general incorporation act of 1872 as a village.

The village has a population of twelve hundred and is located on parts of sections 4 and 9 in Greenfield township.

The defendant owns and operates a railroad with double tracks, running in a northeasterly direction through sections 19, 18, 17, 8, 9, 4 and 3, in said township, and thence on through sections 34, 35, 26, 25 and 24 of Braceville town-

ship, intersecting and crossing on said section 34, in said last named township, a large stream, known as Mazon Creek.

The bill sets out in particular that the railroad, by its embankments, is so constructed that in consequence thereof the water and natural drainage of territory south of said railroad is wholly cut off and intercepted, and dammed back by said railroad embankment, except such portions as can be accommodated by the south railroad ditch; that the three culverts mentioned in the bill and railroad ditch on the south line of the road are wholly inadequate to accommodate the natural and usual drainage of the land; that the portion of the village of Gardner lying south of the railroad requires for suitable drainage a culvert or waterway across the said railroad, at the intersection of two sloughs mentioned in the bill, and also a culvert at two other points mentioned, part of the village of Gardner; that the railroad dams back and diverts the water of said two sloughs to such an extent that the public streets of the village on the south side of said railroad have been, and in time of heavy rains are, greatly damaged, public travel thereon interfered with and the sidewalks torn up and washed away, while the cellars and lower rooms and many of the residences of the village on the south side of the railroad have been, and in time of heavy rains will be again, actually flooded, by means whereof the said railroad embankment has become now, and will continue to be, a public and private nuisance.

The bill prays a decree of court to compel the appellant to remove the embankment across said two sloughs, and also to compel the railroad to construct and maintain across said railroad embankments two or more culverts, or openings for water, three feet wide, and two feet deep, at points mentioned in the prayer.

The bill was answered and the cause referred to the master, who reported his conclusions, sustaining the allegations of the bill, and reported among other things, that the railroad ditch which passed through the village was of sufficient capacity to carry off all surface or slough water, except occasionally, to some extent, up to the spring of 1892,

when an unusual rainfall came and overflowed nearly every lot on the south side of said railroad track in the village of Gardner, doing a large amount of damage to the inhabitants living on that side of said railroad.

Appellant excepted to the master's report before the master and before the court, which was overruled, and the court decreed the general relief asked in the bill compelling the appellant to erect the culverts.

The appellant insists, as he did in the court below, that equity had no jurisdiction in the case because the evidence did not show the wrongs complained of to be a nuisance *per se*, and there has been no adjudication at law establishing the existence of the nuisance. The evidence is somewhat conflicting as to whether there has been any change made by appellant changing the flow of the water or obstructions in recent years. If, as is claimed by the appellant, the railroad embankment has remained for forty years in its present condition with its present means of flowing the water, the appellee having acquiesced therein without complaint during that time, it has lost its right to relief by its own *laches*, if ever such existed. The evidence shows, as well as the master's report, that in all ordinary times the present facilities for carrying off the water through the railroad ditch are sufficient, but in extraordinary wet times, such as in the spring of 1892, damages are liable to be done.

We can not say that appellee has clearly established its right. A court of equity will not have jurisdiction over the subject of nuisances except in extraordinary cases, where the case is clear and free from all substantial doubt as to the right of relief, for in doubtful cases the party will be turned over to his legal remedy.

It must be a strong and mischievous case of pressing necessity or the right must have been previously established at law. The defendant in an action of this character ought not to be deprived of his constitutional right of trial by jury unless in a clear case.

The following cases support the above doctrine: Oswald

v. Wolf, 129 Ill. 200; Nelson v. Milligan et al., 151 Ill. 462; Robb v. Village of La Grange, 158 Ill. 21; Wahle v. Reinbach, 76 Ill. 322.

The evidence shows that the railroad ditch is adequate to carry all the water in times of ordinary rainfall, and Harry E. Snyder, a member of the village board, who, except two years, lived in the village of Gardner nineteen years, never saw the water in those houses at any time before or since 1892, at which time the flood continued twenty-four hours. So it will be seen that this is not a very pressing matter, so that a question of fact might not have been passed on in a suit at law. That same year Mr. Eldridge, who was a civil engineer in the employ of appellant, testified that he remembered the high water of 1892. "At that time our tracks at three-quarters of the distance between Alton and St. Louis were submerged with water so that we had to use steamboats for eleven days, and something like a dozen culverts between Lemont and Lockport the high water went over. We have had no trouble with water since then; no complaints about flowage of water about Gardner ever came to the engineering department except at this time;" and this seems to be the substance of all the evidence.

We think it is a fair question for a jury. Holding as we do under the evidence and facts of the case that a court of equity had no jurisdiction until appellee established its right at law, the decree of the court below is reversed and the cause remanded, with instructions to the court below to dismiss the bill without prejudice to appellee's right to bring a suit at law to establish a nuisance and also in equity after such right is established. Decree reversed, with directions.