FRANK R. CRANE, Plaintiff in Error, *vs.* THE VILLAGE OF ROSELLE *et al.* Defendants in Error.

*Opinion filed October 26, 1908.*

WATERS—*a village may rightfully drain surface water into a stream.* A village which is the owner of the dominant heritage on a natural water-course may, by means of ditches or drains, collect its surface water and pass it off over the servient heritage through such stream so long as it does not cast its sewage upon the servient estate or create a nuisance; and if no nuisance has been established at law, a court of equity will not interfere by injunction, at the suit of the servient owner, unless the allegations of the bill are proven by clear and satisfactory evidence.

WRIT OF ERROR to the Circuit Court of DuPage county; the Hon. L. C. RUTH, Judge, presiding.

This was a bill in chancery brought by plaintiff in error, in the circuit court of DuPage county, to restrain defendants in error from proceeding with the construction of a sewerage system in the village of Roselle and from trespassing upon and damaging his land. The bill alleges that complainant is the owner of a farm of one hundred and seventeen acres lying north of and adjoining the village of Roselle, valued at $100 per acre, and stocked with cattle, hogs, horses and other stock worth $3000; that a natural stream of water runs through the entire length of the land, into which empty a number of small springs, forming a

236—7

pure, clear, safe, convenient and healthful watering stream used by the complainant for watering said stock; that said creek follows its natural course from the east side of State road, a street of said village of Roselle; thence along the north side of Hattendorf avenue, in said village, across lots 2 and 3 in block 2, and thence into and upon the land of complainant. The bill avers that defendants are engaged in the construction of a system of sewers in the village of Roselle and for that purpose are laying tile under the surface of the ground, which carries the sewage to and empties it into said natural water-course on complainant's land; that said village is laying drains to connect houses with said tile for the purpose of discharging therein sewage of the village and causing it to flow into said natural water-course and upon complainant's land, thereby rendering unfit for use the water in said water-course and discharging larger quantities of water upon complainant's land than flowed to and upon it through said natural water-course.

The answer admits that the village is laying drain pipes but denies that they are for the purpose of affording a sewerage system for said village, and avers that the village of Roselle has not over three hundred inhabitants, has no system of water-works and does not contemplate the construction of any water-works system; that it has no system of sewers, and no water-closets are connected with or intended to drain into any part of the drainage work under construction. The answer further avers that the ravine or gully which runs through Hattendorf avenue, in said village, and thence into the water-course on complainant's land, renders it impracticable to improve Hattendorf avenue without diverting the water into a tile under the surface of the ground, and that the purpose of laying the tile in Hattendorf avenue is to divert the water under the surface so that the street may be improved and rendered fit for use and travel, and that the other tile drains constructed or proposed to be constructed,

which empty into the larger tile in Hattendorf avenue, are constructed with catch-basins and are intended for surface drainage only, and that none of said tile drains are constructed for the purpose of carrying sewage. The answer further avers that the natural outlet for the surface drainage of said village of Roselle is into the water-course which passes upon and through complainant's land, and that the tile drain being laid will not increase the flow of water in said water-course nor further pollute the stream, but is intended simply to carry the surface water from said village.

Upon filing their answer defendants served notice on complainant that they would move for a dissolution of the injunction, and in support of said motion would read certain affidavits, copies of which were attached to the notice. Before hearing the motion, the court, at the request of and accompanied by counsel for both parties, visited the village of Roselle and went upon and examined the premises and the work sought to be enjoined. The motion was then heard by the court upon affidavits of both parties, and a decree was entered finding that the work being done by defendants was for the purpose of caring for the natural flow of water running into said creek, and that the stream had not become polluted by the construction of the drains in question. The court further found that the allegation that the village of Roselle intended to establish a system of sewers by the use of said drains was not established, and dissolved the injunction and dismissed the bill without prejudice for want of equity. Complainant brings the cause to this court by writ of error.

JOHN E. OWENS, (WILLIAM J. STAPLETON, of counsel,) for plaintiff in error.

FRED A. RATHJE, and WILLIAM R. BURLEIGH, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

. Plaintiff in error's land through which the stream runs lies north of and adjoining the village of Roselle. State road runs north and south at the west side of the village. Bokelman and Center streets are, respectively, one and two blocks east of State road, and also run north and south. Hattendorf avenue runs east and west and is one hundred and fifty feet south of complainant's farm. Chicago street also runs east and west, one block south of Hattendorf avenue. The land between Hattendorf avenue and complainant's land was formerly owned by complainant and was by him laid off into lots and blocks. Block 3, lying just east of State road and north of Hattendorf avenue, contains five lots, numbered from 1 to 5, respectively, beginning on east side of the block, and block 2, just east of block 3, contains four lots, also numbered from the east. The stream in question comes from the north and west, and crosses State road near the north-west corner of block 3 and runs south-east across lots 5 and 4 of said block 3, and east along Hattendorf avenue a distance of about two hundred feet; thence east along the land just south of Hattendorf avenue, to a point a short distance east of Bokelman street; thence north across Hattendorf avenue and north-east across lots 3 and 2 of block 2, into plaintiff in error's farm. Defendants cut an open ditch along the west side of State road to its intersection with Hattendorf avenue and diverted the stream into it. From this point they laid a thirty-inch tile drain under Hattendorf avenue east to its intersection with Bokelman avenue, and thence north-east across lots 3 and 2 of block 2, connecting with the stream at the line of plaintiff in error's land. There is also a tile drain from Chicago street down Bokelman street, connecting with said thirty-inch tile.

The theory of complainant's bill is, that the improvements made and contemplated to be made were for the purpose of establishing a sewerage system; that the stream on

complainant's land was to be used as an outlet for the same, and that the sewage, filth and polluted water cast in the stream on his farm constituted a nuisance that the court should enjoin. Defendants contend the drains were constructed for and intended to be confined to the carrying off of surface water that naturally flowed upon complainant's land, which proper drainage required in order to enable them to improve the streets of the village.

Complainant read in evidence five affidavits. From one affidavit it appeared that H. H. Bremer, the engineer who prepared the plans for the system of drains, told one of affiants that he had been authorized by the village to formulate plans for a drainage and sewerage system in said village, and that all sewers would drain into the main drain and that house connections would be made from time to time. Complainant's affidavit stated that he was familiar with the proposed system of sewers, and from an examination of the same and from conversations with the village officials he believed that the entire sewage of the village would be discharged on his land and that a number of houses had been connected with said sewers. The manager of complainant's farm made affidavit that the stream on complainant's farm had been used for furnishing water for his stock, but that since the laying of the drains in question he had seen filth and refuse matter flowing into the stream from the thirty-inch tile drain; that such discharges were accompanied by noxious and offensive odors, rendering said stream unfit for use. The affidavit of Waterman, a civil engineer, after describing the course of the stream, stated that he had made an examination with a view of ascertaining the presence of house connections with said sewers, and that he found a closet in a saloon connected with the sewers and found eight house-drain connections with said sewers, four of which were new connections; also several catch-basins in Chicago avenue, and a twelve-inch sewer on each side of Bokelman street connecting with said thirty-inch tile. By affidavits

read by defendants it was shown that the drains were not
for a sewerage system, but were for the purpose of carry-
ing off the surface water and to enable the village to im-
prove Hattendorf avenue; that there was no system of
water-works and no water-closets in the village connecting
with the drain; that the closet in the saloon building re-
ferred to, and all other closets, drained into cess-pools and
not into the drains; that the closets of the eight buildings
mentioned by complainant did not drain into the tile, but
that the only drains from houses into it were a few drains
for the purpose of carrying water, only. The engineer de-
nied telling complainant's witness the village was planning
to install a system of sewers. It was also shown that the
work done was the same as that which complainant en-
deavored to have the village do when he owned the land
on each side of Hattendorf avenue, in order to improve
the streets, so he could sell the lots; also that complainant
agreed with the purchasers of said lots that he would pro-
cure the village to make the improvements as they were
made; that certain of the drains from Chicago street had
been in use for more than thirty years; that the stream
had been in use for more than twenty years as an outlet
for the discharge of house drainage, and the tile drains and
catch-basins from Chicago avenue were laid by an agree-
ment between the village and one William Rathje, complain-
ant's grantor, then the owner of the land in controversy.

It is clear that the stream in question is the natural out-
let for the surface drainage of the village and vicinity. A
consideration of the affidavits warranted the finding that
the laying of the thirty-inch tile in Hattendorf avenue was
for the purpose only of conducting underground the stream
which ran for a considerable distance down Hattendorf ave-
nue, so that it might be improved and made passable, and
that the other drains were for the purpose of collecting the
surface waters from other parts of the village. The village
owning the dominant heritage, in this case had a right to

collect its surface waters and have them pass off over the servient heritage belonging to complainant, so long as it did not cast its sewage upon his land and thereby create a nuisance; and it makes no difference whether said surface water be collected by ditches upon the surface or by tile drains underground. (*Robb* v. *Village of LaGrange,* 158 Ill. 21.) No nuisance having been established in this case by a judgment at law, the granting of an injunction will not be sustained unless the allegations of the bill are proven by clear and satisfactory evidence. (*Robb* v. *Village of LaGrange, supra.*) The evidence as to whether any sewage of the village was turned into the stream in question was conflicting, complainant's affidavits tending to show that it was, and those of defendants that it was not. The court, at the request of counsel for both parties, viewed the premises, and from a personal inspection, in connection with the evidence, determined that the system of drainage was only for the purpose of taking care of the natural flow of the surface water; that no water-closets were connected with said drains, and that said stream was not polluted by reason of said improvements. We are of opinion that none of the allegations of the bill upon which the plaintiff in error relied for the relief prayed were proven by such clear and satisfactory evidence as to have warranted the chancellor in sustaining the temporary injunction.

Complaint is also made of the ruling of the court in admitting certain affidavits offered in rebuttal by defendants, because copies of the same had not been served upon complainant's counsel. The affidavits were merely in rebuttal, and were filed in court on November 1 and the cause was not heard until November 8. No authority is cited by complainant for requiring such affidavits to be served on him, and we know of none. No error was committed by the court in this regard.

The decree of the circuit court is affirmed.

*Decree affirmed.*