Alfred Mack, J.
Plaintiff in her petition alleges that she is the owner of certain described real estate in Anderson township, Hamilton county, Ohio; that the commissioners of Hamilton *58 county are maintaining and operating a sanitary sewer system in Beechmont Terrace subdivision in said township, which subdivision is immedately south and adjacent to the southern boundary of plaintiff’s property; that since the completion of said sanitary sewer system on August 30, 1928, the sewage and refuse from the same has been permitted to flow on and across the land of plaintiff. It is alleged that said sewer system collects the sewage from all houses in Beechmont Terrace subdivision, and that such sewage consists of bathroom, toilet, cellar sink and other drainage, and that after the same passes through the sewer system said sewage and refuse is caused to flow on to and across plaintiff’s land. It is further alleged that the refuse is continually visible on plaintiff’s land and that it is unsanitary, unhealthy and is causing a nuisance.
It is further alleged that on account of the foregoing plaintiff’s land cannot be used for ordinary farm purposes, etc.
It is alleged that defendants at no time procured any legal right to flow such sewage and refuse from said system on to and across plaintiff’s land. A permanent injunction and any other proper equitable relief is prayed for.
Defendants by way of answer admit the installation and operation of a sanitary sewer system in said subdivision, and that the same takes care of and collects sewage from about seven houses in said subdivision. 'They allege that the flowage over the land of plaintiff from said system is through a natural water course, and consists solely of purified water from a sanitary sewage disposal plant located near, but not on land owned by plaintiff, and the defendants deny every other allegation in the petition not admitted to be true.
After an inspection and view of the premises by the court this cause was submitted upon the pleadings and evidence. To more thoroughly understand the conclusions of the court as to the facts the following undisputed facts should be noted.
Beechmont Terrace subdivision consists of forty-eight lots extending northwardly from the south side of Beechmont or Ohio Pike. Said lots are in two tiers. To the east of the northern end of said subdivision is a ravine or natural water course thirty or more feet below the surface *59 of the lands in said subdivision; said ravine or natural water course being fed by smaller water courses or ravines, one of which runs through the northwesterly five lots of the subdivision. Any water or drainage into said large ravine or water course flows northwardly not only from lands south of plaintiff’s land, but also through plaintiff’s land emptying into a creek running through plaintiff’s land in a westerly or southwesterly direction. The sanitary plant in question is located on the northwesterly part of said Beechmont Terrace subdivision and no part of the same is on the land of plaintiff. Said sewage plant can take care of sewage from about twenty-five houses. Twelve houses in all have been built upon said subdivision, one of which has since been destroyed by fire. There have never been more than ■ ten houses connected with the sewage system and permits to use the sewage system have been issued for seven houses. Said sewage plant is what is known as a septic tank system, in' which there are three tanks or compartments, and in such system the sludge remains in the first tank, where it enters and is disposed of by removal therefrom after the water has been extracted therefrom.
The general nature and operation of such a system is described in the case of Vickers v. City of Durham, 132 N. C., 880, and the details thereof are unnecessary for an understanding of the instant case. Suffice it to say that at the end of the third or last tank or compartment there is a discharge pipe from which the water extracted from the sewage flows or drips, dependent, of course, on the amount of sewage discharged into the first tank or receptacle. In the instant case such water flows or drips from this outlet pipe and finds its way into the large ravine or water course hereinbefore referred to and through it to the creek on the land of plaintiff.
In the inspection of the plant by the court an odor therefrom was encountered only when the manholes or covers on top of the tanks or receptacles were removed. No odor other than such as is encountered in smelling creek water or water containing earthy substance exists at the point of the outlet from the last of the three tanks or receptacles of the system in question.
*60 Plaintiff has filed as Exhibits A and B two one gallon bottles containing water gathered from said outlet pipe and the court is unable to agree with the contention of plaintiff that there is any odor to such water other than that which is perceived when Ohio river water taken from said stream at a low stage of water is delivered during the warm summer months by our Water Works Department.
Corroboration of the court’s conclusion upon this point is the fact that when strangers to the controversy were asked by the court to smell the contents of said two bottles each one found no disagreeable odor, but only a slight earthy smell.
The water in said samples is slightly cloudy and has floating in it some particles of earth or algae, which, according to the evidence in the case, do not affect its use for cattle to any greater or different extent than ordinary creek water is affected.
In the opinion of the court not only has the plaintiff failed to establish by a preponderance of the evidence that the discharge from said outlet pipe is unsanitary and unhealthy and causes a nuisance, and that therefore the land of plaintiff cannot be used for ordinary farm purposes and cattle grazing purposes, but upon the contrary, the court is of opinion that the clear and convincing evidence shows that the water discharged from said outlet pipe is without offensive odor, it is not unsanitary or unhealthy in the sense that the land of plaintiff cannot be used for ordinary farm purposes and cattle grazing purposes, and that no nuisance is caused thereby.
It is undisputed that the operation of the plant in question has been approved both by the state health authorities and by the sanitary engineer of the commissioners of Hamilton county, Ohio. From time to time tests were made of the sample of effluent from this sewage treatment plant and the tests have indicated by analyses of a chemist and bacteriologist that such effluent from the plant was free from odor and did not result in the creation of any nuisance. Moreover, such tests developed that the plant was carrying only a light load and functioning very efficiently. Moreover, the tests developed that the effluent was saturated with oxygen to the extent of from less than 2 to *61 not over 4.1% of oxygen saturation shown in untreated Ohio river water in the Water Works reservoirs of the city of Cincinnati. Moreover, such tests developed that as regards aeration the treated sewage is practically as highly oxygenated as Ohio river water.
In view of the clear and convincing testimony, this court is of opinion that in no sense can the discharge of the water or effluent from the outlet pipe into the ravine or natural water course be regarded as creating a nuisance. Such being the conclusion of the co.urt, it necessarily follows from well established principles administered both in courts of law and equity that the plaintiff in the instant case has no just cause of complaint which entitles her to damages in a court of law or to an injunctive order in a court of equity.
In this state it is well established that where a governmental subdivision in a disposal of sewage causes any substance to be discharged into a natural water course, its right to do so is recognized, provided that it does not thereby create a nuisance inflicting special and substantial damages on the proprietor of lands lower down on such natural water course. City of Mansfield V. Balliett, 65 O. S., 451.
In the elaborate opinion in City of Mansfield v. Bristor, 76 O. S., 270, at 276, the rule is recognized that the owner of land from which a stream of water flows has a right that it should continue to flow in the manner in which it is accustomed to flow by nature, subject, however, to the right of upper land owners to make reasonable use of the stream, and that governmental subdivisions have the right to use the stream for sewage purposes, provided it can be done without material injury to the lot owner below.
In Tepe v. Norwood, 48 Weekly L. B., 876, Judge Little-ford of this court in his charge to the jury stated that it is the right of the city to drain off surface water and water from houses into a natural water course so long as the water course is not rendered impure or polluted by village filth; that the pollution must be sufficient to cause special and substantial damage sufficient to impart to the water enough impurity to substantially impair its value, or enough to cause bad odors to arise from the water so as to impair *62 the enjoyment or use of property in the vicinity, or to disgust the sense of smell.
While it is true that this case was affirmed by the Circuit Court in case No. 3783 on the docket of said court, and such affirmance in turn affirmed by the Supreme Court opinion, in 71 O. S. 519, nevertheless it should be noted that said affirmances were on the ground that there was not a proper bill of exceptions. In the Circuit Court the bill of exceptions was stricken from the files and the record in the Supreme Court shows an affirmance of such order, which, of course, disposed of a review of the charge of Judge Littleford. The case is referred to because, in the opinion of this court, it applies well established principles.
In Holzer v. Epling, 17 Oh. App. 414, it is ruled that where an anticipated nuisance is doubtful and the act sought to be enjoined may or may not become a nuisance, depending upon the use or operation or other circumstances, equity will not intervene.
In the case of Attorney General v. Gee, Law Rep. - 10 Equity Cases, 131, Vice Chancellor Malins held that a board of health of a town would not be restrained from discharging sewage in a river where the injury proved was trifling.
In Bainerd v. City of Newton, 154 Mass. 255, Mr. Justice Holmes of the U. S. Supreme Court, then a member of the Supreme Judicial Court of Mass., dismissed a bill seeking an injunction where the discharge of surface drainage at times had a disagreeable smell not found to amount to a nuisance. At page 256 he said:
“The pollution of water by the usual impurities from streets is not a cause of action. The use of his land for streets with the usual consequences to owners lower down upon the stream would not exceed the common law rights of an upper owner.”
In Robb v. Village of La Grange, 158 Ill. 21, the court held that to justify the granting of an injunction to restrain the drainage by a city of its sewage over the. premises of another and into a stream, evidence that a nuisance is created must be clear and satisfactory, where a nuisance has not been judicially established.
*63 Gould on Waters (2nd ed.) Section 220, states the rule as follows:
“Proprietors upon streams may cast sewage and waste material therein, if they do not thereby cause material injury to public or private rights. The natural right of one proprietor to have the stream descend to him in its pure state must yield in a reasonable degree to the equal right of the upper proprietors, whose fertilization, cultivation or occupation of their own lands, and whose use of the stream for mill and manufacturing purposes, for irrigation, and domestic purposes, will tend to make the water more or less impure, especially when the population becomes dense. So, it is of public importance that the proprietors of useful manufactories should be held responsible only for appreciable injury caused by their works, and not for slight inconveniences or occasional annoyances, or even some degree of interference with irrigation or agriculture.”
In Farnham on Waters and Water Rights, Yol. 1, page 623, Section 138, it is stated:
“Flowing streams are the natural means of drainage of the territory through which they flow. In ordinary times, when there is little water flowing on the surface of the land and most that finds its way into the stream comes from seepage and the flowing of springs, the water in the stream is comparatively pure and is fit for many domestic purposes and use in the arts'where absolute purity of water is not required. But in times of hard rains, when the water cannot find its way rapidly enough through the soil and flows over the surface, it becomes impregnated with the soluble products with which it comes in contact, and the water flowing in the stream becomes discolored and more or less unfit for use. This is the natural condition, to which all persons living along the banks of the stream are bound to submit.”
Said text writer under Section 138-a discusses how sewage may be rendered innocuous and refers to the case of Vickers v. Durham, above mentioned.
During the trial it was pointed that the plaintiff, having acquired title to her real estate mentioned in the petition after the completion and operation for some time of the sewage plant in question, ought not to be allowed to make any complaint, for the reason that she purchased her land with full knowledge of existing conditions. However, in the elaborate opinion of Judge Marx, of the Superior Court *64 of Cincinnati, in Kirk v. City of Cincinnati, 25 O. N. P. (N. S.) 473, at 475 and 476, the authorities are discussed and are shown to hold that the plaintiff does not take title cum onere as regards conditions which would have justified an owner, having title before the acts complained of were commenced, being entitled to damages or seeking relief. If, therefore, the evidence in instant case were such as would have entitled a person owning the real estate of plaintiff before the construction of the sewage plant to relief, then such relief would be granted to plaintiff notwithstanding her purchase after the completion of such plant.
In view of the conclusion reached by this court, it is not deemed essential to discuss the question whether plaintiff should be relegated to an action for damage rather than relief by way of injunction.
Both the evidence and inspection of the premises disclosed that on the bank of the large ravine and a short distance south of the sewage plant, there is a large dump of tin cans, ashes and household refuse. On the day of such inspection (February 14, 1934) the temperature was about forty degrees. At such time and under such circumstances no perceptible odor was encountered from such dump. What the effect thereof would be after a rain and during the heated season it is unnecessary to consider, because defendants, the commissioners of Hamilton county, are in no manner responsible for the acts of occupants of houses in such subdivision depositing such matter in said dump. Moreover, the conclusion of this court upon the facts of the instant case makes consideration of said matter unnecessary.
As pointed out above, the sewage plant in question is functioning under a load of only 28% of its capacity. Under such most favorable circumstances the effluent delivered at the outlet pipe meets every representation made by builders of such a plant. What would be the condition of the effluent when the plant functions at its maximum or overtaxed capacity it is unnecessary to decide. If in the future by reason of improper functioning of the plant, or on account of overtaxed capacity a different situation than has been developed in the instant case should arise, plain *65 tiff should not be barred from applying’ for relief under such changed circumstances.
It follows from a view of the premises and from a full consideration of the evidence in the instant case, that the petition of plaintiff will be dismissed at her costs.